Hash, C. J.
 

 Thebill alleges that Susan Webber, one of the plaintiffs, was the owner, in her own right, of a tract of land, which, after her intermarriage with the other plaintiff, Samuel Webber, it was agreed between them, should be conveyed to one Spiers Witherington, for the purpose of being sold, and that the money arising from the sale, should he placed in the hands of Thomas Moore, for the sole and separate use of the said Susan. All of which was accordingly done, and the pur
 
 *10
 
 chase money amounting to $87, was by the said ’Witherington, delivered over to the said Moore, who agreed to hold it on the trust above stated. The bill further charges that the plaintiff', Susan, purchased from Mrs. Rebecca Hart the tract of land now in contest, and on which she and her husband were then living, and where they continued to live, and now live, for the price of $135, and to make up this sum, the said Thomas Moore paid over to her agent, M. Barret, the sum of $87 so in his possession belonging to the plaintiff, and she paid the balance, $48 of her own money. It is further charged that the plaintiff, Samuel, being indebted to one Edward Carman, in the sum of $30, the land was, with her consent, conveyed to him, she joining in the conveyance. That though the deed was absolute on its face for the full sum of $135, it was intended only as a security for the money due him, Carman, and that no money was paid ; that she offered, subsequently, to pay to him the amount of his debt, and demanded a reconveyance which he declined to mate. Subsequently, Carman conveyed the land to the above named Thomas Moore for $30, which she paid him, but he refused to reconvey it to the plaintiff unleswaho would consent to pay to him a debt of $50 due to him from the plaintiff, Samuel. A reconveyance from Moore was demanded, with an offer to pay him the sum he claimed, which he refused, and afterwards, in December 1852, sold and conveyed the land to the defendant for the sum of $200: and the plaintiffs charge, tnat Taylor, at the time of his purchase, had full notice of their equitable title. Prom him a reconveyance was demanded. They further show that the defendant has instituted a suit in ejectment, and recovered a judgment, as they could make no defence, and threatens to turn them out of possession. An injunction issued according to the prayer of the bill.
 

 The defendant admits his purchase and the amount paid, but alledges he is a purchaser without notice of the equity which the plaintiffs claim, and without any knowledge of the alledged promises of Carman or Moore. He admits that at the time he purchased the land, he knew that the plaintiffs
 
 *11
 
 were living on it, but be supposed and believed that they were living'there as the tenants at will of Thomas Moore.
 

 Upon the coming in of the answer, the injunction was dissolved, and the plaintiffs appealed to this Court.
 

 The deéd to Carman from the plaintiff, was executed in October 1850.
 

 Our sole inquiry, at present is, whether there is error in the interlocutory decree dissolving the injunction. The equity of the plaintiffs claim, rests upon the alledged knowledge of the defendant of its existence at the time of his purchase. It is a rule in Equity that a purchaser, taking with notice of a prior equity, takes subject to that equity, for he shall be assumed to have contracted for that only, which the owner could honestly transfer, namely, his interest, subject to the equity, as it existed at the time of the notice. Thus a purchaser from a trustee with notice, becomes himself a trustee. This is a well known principle of equity jurisprudence, and is not questioned in this case. The only difficulty, some times, is, in ascertaining what degree of information will amount to notice. It is not essential that the notice should be given to the party himself, notice to his agent is sufficient. Where it is by actual information, there can be no difficulty, or where the purchase is made during the pendency of a suit. But it is not necessary, in order to charge a purchaser, that he should have
 
 uebval information
 
 of the equity. ITemay be affected with notice by information of the existence of any fact or instrument, relating to 1he subject matter of his contract, which, if properly en-quired into, would have led to its ascertainment. Eor instance, says Mr. Adams, p 198, “if the defendant purchases land which he knows to be in the occupation of another than the vendor, he is bound by all the equities of the party, who is in the occupation. So, if he knows of any instrument forming directly or presumptively, a link in the chain of title,
 
 he
 
 will be presumed to have examined it; and therefore, to have notice of all other instruments or facts, to which an examination of the first could have led him.” Whatever, in fine, is sufficient to put a person on inquiry, in relation to prior equities, is considered in equity, equivalent to notice.
 
 Hawley
 
 v.
 
 Cra
 
 
 *12
 

 mer,
 
 Cow., 717,
 
 Pearson
 
 v. Daniel, 2 Dev. and Batt. Eq. 36C;
 
 Benzien v. Lenoir,
 
 1 Dev. Eq. 225. Let ns apply these principles to the case before us. The defendant is charged with being a purchaser, with notice of the prior equity of the plaintiff. The bill charges, that ■ at the time the plaintiff Susan, made her purchase of the land from Mrs. Hart, the plaintiffs were in the actual possession of the land, and that they so continued, up to this time. The defendant admits that when he made
 
 his
 
 purchase, he knew the plaintiffs were so in posses-, sion, “but that .he thought and believed they were there as
 
 tenants at will to Moore.”
 
 This brings him expressly within the operation of the principle, as stated by Mr. Adams. Here was an occupancy of another than his vendor, Moore. "Why did he not enquire upon what ground or title they held their occupancy ? He gives us no reason why he believed them tenants at will of Moore. Why tenants at will rather than tenants for years? Thelatterisfarmorefrcqnentthan the former. Was it the relation of mortgagor and mortgagee that suggested that species of tenanc,y? Brit again, it is alledged in the bill, that the conveyance from Carman to Moore, set forth the consideration money to.be $30 : this is not denied in the answer. That was the title deed of Moore under which he claim- ' ed the land; it was not a link in the chain, it was the chain itself. Equity, therefore, will presume that, he did examine it. He there saw that Moore had given but thirty dollars for a tract of land, which he was selling to him for more than six times that amount; and, at the same time, he knows that others are in actual occupancy of the premises. This is not negli-(¡nee, which in itself is not notice, nor is if. fraud, but it is strong evidence of it: so strong, that nothing in the answer repels it. We are driven to the conclusion, that though the defendant, Taylor, may not have had actual information of the alledged prior equity of the plaintiffs, the circumstances were such as to put him on enquiry, which is considered in Equity as equivalent to notice.
 

 With the equities set forth in the bill, we have at present, nothing to do; they are charged in the bill and not denied in the answer. The defendant rests his defence, in the present
 
 *13
 
 enquiry on Lis being a purchaser for a valuable consideration without notice. Being of opinion, that the defendant is a purchaser, with notice of whatever equities were in the plaintiff, Susan Webber, his Honor erred in dissolving the injunction.
 

 The injunction must be continued to the hearing, when the parties will be put to their proof.
 

 The interlocutory order is reversed, and the defendant must pay the costs of this Court. This opinion will be certified to the Court of Equity of Greene County.
 

 PeR Curiam. Decree accordingly.