Pearson, C. J.
 

 (After stating the facts as above,) The defendant William C. Burke had notice, either express or by having his attention called to such facts and circumstances as ought to have put any prudent and conscientious man upon inquiry, so that he is affected with notice.
 

 The plaintiff is entitled to compensation from Planks for the breach of trust, if he is able to make it, and'also from the other defendants Harman H. Burke and Mili kin, for the
 
 *312
 
 aid and countenance given by them to Hanks; and also has an equity to follow the land into the hands of. the other defendant AV. C. Burke, and call for a conveyance from him, together with an account of the mesne profits, if he has received any, so that the plaintiff may have his land on payment of the purchase money, unless the defendant AV. C. Burke has set out matter in his answer sufficient to repel the equity of the plaintiff; by
 
 alleging
 
 and
 
 proving
 
 a transfer or abandonment of the plaintiff’s equitable estate to him before he bought the land from his co-defendants Harman H. Burke and Millikin. This is the only question in the case, and the difficulty about that is not only the want of proof, but the absence of all sufficient allegations in the pleadings; and we must ag-ain call the attention of members of the bar to the point, that proof without allegation is no better than allegation without proof. Hanks files a separate answer, and Harman Ii. Burke, Millikin and AV. C. Burke file a joint-answer, and seem disposed to embark in the same bottom. The only allegation of a transfer or abandonment of the plaintiff’s right in favor of the defendant AV. C. Burke is in these words: “These defendants further answering say, that the said H. II. Burke and Millikin did convey the land to AV. C. Burke as set forth in plaintiff’s bill, and that said land, when it came to be run off, was surveyed by Nathaniel Clegg, at the request both of May and the defendant AV. C. Burke, and that the plaintiff May wras present as one of the
 
 chain
 
 carriers, and assented thereto, and set up no claim to the land, and that last August, one year ago, the plaintiff May offered the defendant AV. C. Burke $1000 for the land mentioned in the will, and set up no claim to it.”
 

 So there is not the slightest allegation of any transfer or abandonment of the plaintiff’s equitable estate, in favor of the defendant, AAA C. Burke,
 
 ai any time prior
 
 to his pur
 
 *313
 
 chase from his co-defendants, Harman H. Burke and Millikin; and all we have afterwards is the fact that the plaintiff was present, and acted as chain carrier in running off this land from other land in which the mother of May owned the fee simple, Avhereas in this she only owned a life estate, and that May set up
 
 no claim to the
 
 land, and actually offered $1,000 for it some time afterwards. So the pleadings show only an
 
 ex post facto
 
 estoppel in regard to land !
 

 Upon the proof we find, although it was hardly necessary' to go into them, that after Harman II. Burke and Millikin got a conveyance for the land from Jackson, W. C. Burke applied to them to buy. They told him they could not sell, “
 
 as May was entitled, to the refi scd.”
 
 Why, and how ? should have been Burke’s inquiry; and their reply would have been: “Hanks is cheating him out of his land. We are implicated in the fraud, and wish to let him have the land if he is able to give as much as we can get from any one else.” However, W. C. Burke applies to May, who, in effect, tells him that Hanks and H. H. Burke and Millikin have defrauded him out of the land; that he is not able to help himself; that he might have paid up what he is to give Rencher, but these accumulated difficulties were too much for him; he could not stand it; that if the land rvas to be sold, he would rather W. C. Burke should have it than any one else, &c. And W. C. Burke, taking advantage of the distress of his neighbor, and the helpless condition to which he had been reduced by the conduct of his co defendants, buys the land from them; and now, in a court of equity, insists that May should not be allowed to set up his equitable estate.
 

 Had W. C. Burke paid May, say $50 or $100, and taken a transfer of his equity in writing, Burke could only have held the title as security for the money advanced. As, however, he paid nothing, and took no writing or note or memorandum of the contract by Slay to transfer or abandon his in
 
 *314
 
 terest in the land, the transaction is void under the statute of frauds.
 

 When the courts are called upon to apply the doctrine of equitable estoppel on the ground of a transfer, or waiver, or license to sell, either expressly or by implication from the conduct of the party, then if the subject be land as in
 
 Pickard
 
 v.
 
 Sears,
 
 33 E. C. L. R., 117, cited in
 
 West
 
 v. Tilghman, 9 Ire. 166, the statute of frauds will apply; but when the aid of the courts is invoked on the ground of direct
 
 fraud
 
 in fact, as in
 
 Sanderson
 
 v.
 
 Ballance
 
 2 Jon. Eq, 322;
 
 Blackwood
 
 v.
 
 Jones,
 
 4 Jon. Eq., 54, where one party
 
 knoioingly
 
 and intentionally misleads another, although the subject be land, relief will be given, on the ground that otherwise the statute of frauds would be made the instrument of fraud.
 

 There will be a decree for the plaintiff in conformity to this opinion, and the cause will stand for further directions, should a sale of the land become necessary or should Mr. Rencher become a necessary party, that he may be bound by the decree in regard to the balance due for purchase money.
 

 Per Ctjriam.
 

 Order according-ly.