JOHN C. HEYER v. NED BEATTY.

*Estoppel—Notice.*

1. Acts posterior to a sale, such as the payment of rent to the purchaser by one who claims that he owned certain land at the time it was sold to pay the debts of a third person, cannot be received in evidence to estop such claimant from asserting his title against the purchaser.

2. While it is a general rule that possession of land is notice to the world of all equities in favor of the occupant, this rule does not extend to the possession of a slave prior to 1863, who bought and paid for land and had the legal title conveyed to the white owner of his wife who made her home on such land.

(*Mason* v. *Williams*, 66 N. C., 564; *Webber* v. *Taylor*, 2 Jones' Eq., 9; *Maxwell* v. *Wallace*, Busb. Eq., 251; *Harrell* v. *Watson*, 63 N. C., 454; *Lea* v. *Brown*, 5 Jones' Eq., 379; *Barker* v. *Swain*, 4 Jones' Eq., 220; *Lattimore* v. *Dickson*, 63 N. C., 356; *Todd* v. *Trot*, 64 N. C., 280; *Haley* v. *Haley*, Phil. Eq., 180; *Robinson* v. *McIver*, 63 N. C., 645, cited and approved.)

CIVIL ACTION to recover land tried at Fall Term, 1879, of NEW HANOVER Superior Court, before *Eure, J.*

Judgment for plaintiff, appeal by defendant.

*Messrs. D. J. Devane* and *Geo. Davis*, for plaintiff.
*Mr. A. T. London*, for defendant.

DILLARD, J.   This action is to recover a house and lot claimed by the plaintiff under a sale and conveyance by the administrators with the will annexed of W. C. Bettencourt, in July, 1863.

The defendant sets up as a defence that he bought and paid for the house and lot in 1845, and that being a slave, the deed was executed by Campbell, his vendor, by one Lord, his attorney in fact, to Bettencourt on a verbal trust for him, who accepted and held the title to his use until his death in 1862, and that by virtue thereof he had an equity

to have the title against the plaintiff, for the reason that defendant's possession from his purchase in 1845 and continuously to the time of the sale to the plaintiff was in law notice to plaintiff, whereby the legal estate passed to him by the deed of the administrators with the will annexed of Bettencourt, was and still is subject to the equity of defendant. To the answer of defendant setting up this equitable ownership the plaintiff replied, denying the purchase by defendant and the holding by Bettencourt in trust for him, and by way of repelling any equity of defendant as against him, the plaintiff alleged that he knew not who was in possession when he purchased, but that in fact a negro woman, the slave of Bettencourt then lived on the lot and the defendant with her (said defendant being the slave of one Holmes, and claiming said woman as his wife) and that his purchase was for fair value and without notice of any claim of right by or on behalf of defendant; and by way of estoppel on defendant, plaintiff alleged that defendant was present at the sale and did not forbid the same, nor otherwise make claim, but suffered him to buy and pay for the land in ignorance of his alleged equity and that after the sale but on the same day, the defendant rented from him and paid him rent from 1863 until the fall of 1869.

To ascertain how the disputed facts were, the court submitted to the jury several issues on the part of the plaintiff, to two of which respecting the alleged renting and payment of rent by defendant for the house and lot, defendant objected as immaterial, and the objection being overruled, the defendant, to counteract said two issues, asked the court to submit the issue—" Did defendant pay rent to plaintiff in ignorance of the effect of said payment on his rights in and to said land," which being refused defendant excepted, and this exception, together with others taken to the reception of evidence on the trial and to the refusal of special

instructions to the jury as to the land, constitutes the errors assigned, of which we will consider in their proper order.

1. The two issues objected to by defendant, as to his alleged attornment and payment of rent to plaintiff, were offered on the idea that those were acts which, taken in connection with the failure of defendant to forbid the sale or otherwise notify bidders of his claims, amounted to such conduct as in law to estop him from setting up any equity he might have against the plaintiff's title.

In our opinion the matters inquired of in those issues, although found to be as alleged by the plaintiff, did not of themselves establish nor could they be used as an aid to other facts at or anterior to the sale to establish an estoppel on the defendant. It is true that a party entering as tenant to another cannot, while that relation exists, dispute his landlord's title, but on the surrender of the possession he may set up any independent title or equity he may have. But here, as we gather from the case, that relation was put an end to by summary proceedings in ejectment, and so in this action the rule estopping a tenant to deny the title of his lessor does not apply, and the defendant was at liberty to set up his equity, unless by other facts and circumstances *in pais* as alleged, an equitable estoppel were created upon him. The rule as to estoppels of the kind insisted on in this case is, that if one by his conduct, whether fraudulent or negligent or merely omissive, gives another reasonable ground to believe he has no claim, and such other does so believe and acts on that belief, he is estopped afterwards to assert his title or claim. *Mason* v. *Williams,* 66 N. C., 564; Adams' Eq., 150.

Here the attornment and renting inquired of were acts posterior to the sale, and they could by no possibility be regarded as constituting to any extent conduct on the part of defendant drawing or influencing the plaintiff into the purchase of the house and lot. Facts constituting such es-

toppel must be at or before the sale, and therefore as it seems to us, the issues objected to by defendant as well as the counteracting one offered by himself were entirely immaterial to a determination of the case upon its true merits. Such acts on defendant's part were conduct tending to repel the idea of a trust in Bettencourt for him, and might have been evidence on the issue as to that fact, but in no sense could they have been an inducement to a prior purchase.

These issues then being immaterial need not have been submitted to the jury. They were wholly distinct from and had no connection with the other issues in the cause, and neither they nor the evidence adduced in their support, could by possibility have had any effect on the finding upon the other issues submitted, and therefore in our opinion, the submission of said issues to the jury and the rejection of the one offered by defendant to counteract the same were evidently not injurious to defendant and so do not make it proper for their immateriality to reverse the judgment of the court below.

2. The immateriality of the two issues looking to the establishment of an equitable estoppel on the defendant not being ground for the reversal of the judgment, the numerous exceptions to the competency of the evidence received in their support and to the leading character of the questions, go with the issues for the reason above stated and therefore they need no separate consideration.

3. The last exception and the one mainly discussed in the argument before us was as to the law refused to be charged and as charged by the court on the issue to the jury as to the notice by plaintiff of defendant's equity at the time of his purchase in 1863, at the sale under Bettencourt's will. The defendant prayed the instruction that if he was in possession of the lot in question at the time it was purchased by the plaintiff, then the plaintiff was charged with notice of all equities in favor of defendant. His Honor re-

fused so to charge, but instructed the jury that the possession of defendant (he being a slave) and his wife, who lived with him on the premises, being the slave of Bettencourt, who held the legal title, was not notice.

The rule in equity undoubtedly is, that a party taking with notice of an equity takes subject to that equity; that is to say, he is assumed to take and hold only such interest in the property conveyed as his vendor might honestly dispose of, having due regard to the equities existing against him in favor of others. Adams Eq., 151; *Webber* v. *Taylor*, 2 Jones Eq., 9; *Maxwell* v. *Wallace*, Busb. Eq., 251. And the kind of notice spoken of in said rule may be an actual or constructive notice.

In this case there is no pretence of actual notice to the plaintiff of the right claimed by defendant, but it is plainly implied from the terms in which the instruction was asked, that the defendant claimed only to affect the legal title of the plaintiff with a trust from a notice by construction from the mere fact of his possession at the time of the sale. Possession is suggestive of title or right in the possessor and a prudent man should and would inquire into such apparent right before trading with another; and if he do not, it is but just to the rights of the party in possession to hold the purchaser as affected with notice of the equities in his favor.

This rule would make the possession of defendant at the sale notice of his equities against Bettencourt and the plaintiff would be held to take the title subject thereto if defendant were such a person in July, 1863, as the rule applied to, or the manner of his possession such as that the law would infer notice therefrom. The rule clearly would extend to and protect the rights and equities of a person capable in law to have such rights. But could possession by a slave in 1863 and up to emancipation at the close of

the war be constructive notice of equitable ownership in land when by law he could not from motives of the then public policy have such rights?

If it be said possession was constructive notice to plain-tiff, of title in whom was it constructive notice? The wife of defendant, a slave of Bettencourt, in whom was the legal title, lived on the lot and so did defendant a slave of Holmes, and if their possession at the sale was suggestive of title at all, it was more so of title in Bettencourt than of any other person, in accordance with the custom then prevalent among slaves for the husband to go to his wife's house and not the wife to the husband's house.

By the law of 1863, when plaintiff purchased, the de-fendant was a slave unaffected by any act of congress or proclamation of President LINCOLN, and as such he could not hold land nor could a trust of land for him be enforced in the courts against the trustee. *Harrell v. Watson,* 63 N. C., 454; *Lea v. Brown,* 5 Jones Eq., 379, and *Barker v. Swain,* 4 Jones Eq., 220; and so the trustee might have kept or alienated the property at his pleasure.

Since the war the natural rights of the slaves have been recognized and in divers instances gifts, devises and agree-ments to hold in trust, void as against public policy in for-mer days, have been validated and enforced as against the representatives of the original donors or testator, but in no instance that we can find, where the title claimed to be held in trust has passed into the hands of a stranger for value and without notice. See *Lattimore v. Dickson,* 63 N. C., 356; *Todd v. Trott,* 64 N. C., 280; *Haley v. Haley,* Phil. Eq., 180; *Robinson v. McIver,* 63 N. C., 645.

In our opinion, although it might possibly be competent to defendant to have the trust declared against Bettencourt and his heirs if no alienation had been made, yet he cannot affect the plaintiff with such trust, as he had no actual

notice and the possession of defendant operated no construc-tive notice of any equities in his favor.

There is no error and the judgment of the court below must be affirmed.

No error. Affirmed.