W. S. BRYAN v. JOHN B. HODGES et al.

*Entries and Grants — Warrants for Surveys—Rights of Purchasers—Notice—Parol Evidence—Evidence—Judge's Charge.*

1. In an action to declare the defendants trustees for plaintiff's benefit, as to certain lands, the "entry" to which he had purchased from one of the defendants, he introduced in evidence a memorandum made at the time of paying part of the purchase money, signed by .this defendant and showing a balance of forty dollars due "on a certain land-warrant trade, November 28th, 1888": *Held, parol* evidence of what "trade" this paper referred to, and its terms, was admissible.

2. Entry upon lands, and obtaining a warrant for survey, confers upon the person entering no estate or interest therein, but simply the right to be preferred when the money is paid.

3. Such "inchoate equity," or "pre-emption right," may be assigned by parol.

4. Purchases of such an interest for value are affected with notice of all the facts respecting the rights of the vendor who made the entry within their knowledge, or which inquiry, after notice, would have disclosed.

5. Where the defendants, purchasers, were expressly informed by their vendor that the plaintiff was to get the grant out of the office of the entry-taker, and knew that plaintiff had the warrant in his possession, and that, in order to obtain it, he must be paid for it: *Held*, that there was no error in the charge of the Court, that, if the jury believed these facts, such defendants were charged with notice of everything affecting the plaintiff's claim which they might have discovered by inquiry.

This was a CIVIL ACTION, tried at Spring Term, 1890, of WILKES Superior Court, before *Merrimon, J.*

The plaintiff alleged, in substance, that the defendant Pipes, having made an entry for the land in controversy, and having a right to take out a grant for the same, assigned it for value to the plaintiff, the plaintiff paying a part of the price agreed; that, after the land was surveyed and duly certified, the papers were handed over to plaintiff to enable

him to obtain a grant from the State; that the plaintiff forwarded the same, with the necessary money, to the Secretary of State; that, on December 15th, 1888, the grant was issued, but in the name of said Pipes; that, after the transaction with Pipes, said Pipes conspired with J. B. Hodges and the other defendants to defeat the plaintiff's rights, and, in pursuance of said conspiracy, Pipes executed a conveyance to the said defendants; that these defendants had notice of the transaction between Pipes and the plaintiff. It is also alleged that plaintiff has tendered the said Pipes the balance of the purchase-money for said assignment, which he has refused to accept.

The prayer is, that the defendants be declared trustees for plaintiff, and that they convey to him, and for other relief.

The answers deny the material averments of the complaint, and the defendant J. B. Hodges and others allege that they are purchasers for value and without notice.

The following issues were submitted to, and found by, the jury:

"1. Did plaintiff purchase of defendant J. H. Pipes the entry of land described in the complaint? Answer—Yes.

"2. Did plaintiff abandon his alleged contract for the purchase of the land? Answer—No.

"3. Did plaintiff pay to the State the purchase-money? Answer—Yes.

"4. Did defendants John R. Hodges, J. B. Hodges and C. F. Newkerchen purchase the land for value and without notice of plaintiff's claim? Answer—No."

The Court gave judgment for the plaintiff, and the defendants appealed.

The plaintiff testified in his own behalf as follows: "After they got through what they (Pipes and Day) wanted, I told Pipes (the defendant) he had better give me a little memorandum of what I was paying him at that time, and he gave me this paper": The paper was produced and was as follows:

"Due W. L. Bryan $40.99, to be paid in a certain land-warrant trade. This November 28th, 1888.

J. H. PIPES. [Seal.]"

The plaintiff offered to testify further what the trade referred to in the paper was, its terms, etc. To this evidence the defendants objected, but the objection was overruled and the evidence admitted, and the defendant excepted. Defendant's exception covers all the evidence above set out, and all that follows in regard to the contract.

The plaintiff was permitted to, and did, testify as follows: "I took this (the bill above set out) to show the amount I had paid in the purchase. I told Pipes the survey should be made at once, as time was growing short, entry would lapse January 1st, 1889." Plaintiff then testified, in substance, that he purchased the entry of Pipes at ten cents per acre, and was to pay for survey, and also the purchase-money to the State. That he did pay for survey, and paid $100 on purchase-money to the State. Paid Pipes some money, and offered to pay the remainder, and Pipes refused. Defendants excepted to all this evidence.

The defendants (other than Pipes) set up in their answer that they were innocent purchasers for value, and without notice of any claim of the plaintiff, and the Court instructed the jury, in regard to this defence, that the burden of showing that they were purchasers for value was upon the defendants; but it was for the plaintiff to satisfy the jury that defendants had notice of his claim; that if they believed what was testified to by Hodges, they had notice of facts and circumstances to put the defendant on inquiry as to plaintiff's claim, and to affect them with notice of everything which they might have discovered by such inquiry.

The Court then recited to the jury the testimony of the Hodges, which is as follows:

J. B. Hodges testified that he was living within four miles of the land when he purchased—was boarding at J. R.

Hodges'—did not know Bryan; did not know Pipes, except slightly; purchased of Pipes about December 18th, 1888; agreed to pay twenty cents per acre and allowed Pipes to retain a tenth interest; this was a fair value; furnished Pipes $100 to get the grant, and paid all expenses in addition; did not have any knowledge of Bryan's interest; Pipes said Bryan had made him a proposition, and he had not accepted it; the grant left Raleigh December 27th, 1888; took title bond for a deed; deed taken February, 1889. On cross-examination, he said he belonged to the Hodge Mining Company; he bought the property, and took J. R. Hodges and his father-in-law, C. F. Newkerchen, in; when title bond was taken, Pipes and his wife, J. R. Hodges, John Jones, himself and Lindsey Hendrick were present; Pipes said Bryan made him a proposition, and was to get it out of the office; he said the survey had been made; was not positive whether Pipes told him that Bryan had the papers or not; he asked Pipes where the warrant was, and he said he did not know whether Bryan had it or not; Pipes never told him that he had got anything from Bryan on land trade; said he had bought goods from Bryan, but it was not on the land; witness asked Pipes if Bryan had paid him for the land, and he said he had got some goods, but not on the land; he paid Pipes $50; that day (day bond for title was executed) gave him no instructions; told him he could pay Bryan if he wanted to—that that was his (Pipes') business; he asked Pipes if Bryan had paid him anything on the land, and Pipes said he owed him for some goods, and that he and Day had got some goods. The day we went there and got the bond for title, Kelly Hendricks (the surveyor) asked us where we had been, and asked if we had purchased or traded with Pipes; we told him we had leased Pipes' land; did not tell Hendricks we had a grant for the land; Pipes told me the land had been surveyed; I asked who paid the surveyor; he said, "I paid the surveyor;" I cannot swear

positively what was said about expenses; cannot tell now what the expenses were; I took J. R. Hodges in after I traded for the land; I had not heard from any other source but Pipes that Bryan had bought the land.

J. R. Hodges testified as follows: "I live in Watauga County, three or four miles from the land; it is poor land, bluffy and very inferior; we took bond for title December 10th, 1888, and were to pay twenty cents per acre, and all expenses, and let Pipes retain a tenth interest; it was a fair price; had no notice of Bryan's alleged purchase; sometime after we closed our trade with Pipes, the surveyor, Hendricks, came to us and said his understanding was that Bryan had bought this; this was the first I knew of it; thought Hendricks talked like he had been drinking; did not know that he was. Pipes started from my place late in the evening of the 24th of December, 1888, for Raleigh; I wrote a letter for Pipes to the Secretary of State to issue his grant and retain it, and he would send him the money at a moment's notice."

*Cross-examination.*—"It takes a letter about two days to go from my house to Raleigh, when it strikes the mail right; the day we traded with Pipes not a word was said about Bryan having bought; asked Pipes where the warrant was, and he said it was in the hands of Bryan; I was very busy while fixing up the bond for title, dictated it, and Hendricks witnessed it; we paid fifty dollars; Pipes said he needed that much—owed Bryan, and, perhaps, some others; don't know what the expenses of the survey were; never went to see Bryan about his claim; Pipes said he would take the money we paid and go and pay Bryan, and bring the papers; I think I told Pipes if he owed Bryan to go and pay him; Hendricks did not say Bryan had bought it; I did not tell him that all I wanted was for the entry to be held up for a few days; I think Pipes said that the Secretary of State said the grant was not finished, but he would send it out the next day."

The Court directed the attention of the jury to such parts of defendant's testimony as, in its judgment, if believed by the jury, were sufficient to put them upon inquiry concerning plaintiff's claim, and told the jury that defendants would be held to have had notice of whatever such inquiry might have discovered. To this part of the charge the defendants excepted. Verdict and judgment for plaintiff. Appeal by defendants.

*Mr. R. B. Glenn,* for plaintiff.
*Mr. T. F. Davidson,* for defendants.

SHEPHERD, J.:

1. We are unable to perceive any error in the admission of the oral testimony of the plaintiff as to the transaction between him and the defendant Pipes. The latter had made an entry of the land and obtained a warrant to survey the same. This conferred upon him " no estate or interest in the land, * * * but simply the right to be preferred when the money was paid and the other formalities required by the statute complied with." *Hall* v. *Hollifield*, 76 N. C., 476.

The entry, says Justice AVERY, in *Gilchrist* v. *Middleton* (decided at this term), creates " an inchoate equity, which, upon the payment of the purchase-money to the State within the time limited by the law, will entitle the enterer to a grant." This "inchoate equity," or "pre-emption right," may be assigned by parol, and in *Hall* v. *Hollifield, supra,* such a transfer is assimilated to the assignment by a purchaser of his bid at an execution sale. This being established, it must follow that the testimony was properly admitted unless the parties undertook to put their contract in writing. They did not do this, as the receipt is simply evidence of a part payment by the plaintiff pursuant to the oral agreement, and is not contractual in any respect.

107—32

2. The jury having found that the plaintiff purchased the "entry" of the said Pipes and paid the purchase-money to the State, it becomes important to inquire whether the other defendants, who afterwards purchased of Pipes, are affected with notice of plaintiff's claim. There was evidence which tended to show actual notice, but the exception is to the charge of the Court that if the jury believed the testimony of the two Hodges "they had notice of facts and circumstances to put (them) the defendants on inquiry as to the plaintiff's claim, and to affect them with notice of everything which they might have discovered by such inquiry." The principle of constructive notice, as stated in the instruction, is fully sustained by the authorities (*Bunting* v. *Ricks*, 2 D. & B. Eq., 130; *Hulbert* v. *Douglas*, 94 N. C., 122), and it is only necessary to determine whether it was properly applied to the facts of this case. "A purchaser is not affected by vague rumors, hearsay statements and the like concerning prior and conflicting claims upon the same property. * * * On the other hand, the proposition is established by an absolute unanimity of authority, and is equally true, both in its application to constructive notice .and to actual notice, not proved by direct evidence, but inferred from circumstances, that if the party obtains knowledge or information of facts tending to show the existence of a prior right in conflict with the interest which he is seeking to obtain, and which are sufficient to put an ordinarily prudent man upon inquiry, then it may be a legitimate, and, perhaps, even necessary inference that he acquired the further information which constitutes actual notice." 2 Pom. Eq. Jus , § 597. If he does not, in fact, make inquiry, he is "affected with knowledge of all that the inquiry would have disclosed." RUFFIN, C. J., in *Bunting* v. *Ricks, supra*   Tested by the foregoing principles, we are clearly of the opinion that the evidence of the said defendants warranted the instructions as given by his Honor.

These defendants were about to purchase the interest of Pipes in his alleged entry, and they were expressly informed by Pipes that the plaintiff "*was to get it* (the grant) *out of the office.*" They were also aware that the plaintiff and Pipes had been engaged in some transaction by which the latter had received money or goods from the former, and that the plaintiff had the "warrant" in his possession, and that, in order to obtain the same, it was necessary that the plaintiff should be paid. This is manifest from the statement of the defendants that, at the time of the execution of the bond for title and the first payment, Pipes told them that "he would take the money we paid and go and pay Bryan and bring the papers." Notwithstanding all this information, strongly tending to show that the plaintiff had an interest in the entry, the said defendants blindly purchased the alleged rights of Pipes without making any inquiry whatever. The bare statement of these circumstances must inevitably lead to the conclusion that the defendants were put upon inquiry. The fact that Pipes accompanied the information thus given with explanations tending to show that the plaintiff had no interest in the entry, did not in any way relieve the defendants from the duty of making due inquiry of the plaintiff, or otherwise investigating the nature of his claim.

This, it seems, would be otherwise where the information is obtained from third persons having no interest in the transaction, but where the information is obtained from the vendor, "the purchaser, according to the weight of authority, is not warranted in accepting and relying upon this explanation or contradiction. * * * The reason is plain. The informant is under a strong personal interest to misrepresent or conceal the real facts." 2 Pom. Eq. Jus., § 601; *LeNeve* v. *LeNeve*, White & Tudor L. C. Eq., 159, note.

There is no error.                              Affirmed.