METROPOLITAN LIFE INSURANCE COMPANY v. PETER DIAL, JR., AND
WIFE, SARAH DIAL, AND BETTIE DIAL.

(Filed 22 January, 1936.)

1. Trusts C c: Evidence J b—Evidence of conditional delivery of quit-
claim deed held competent in grantor's action to establish trust.

The pleadings and facts agreed in this case disclosed that heirs at law
owning certain lands by inheritance as tenants in common, in order to
partition the lands between them, executed a quitclaim deed to their
brother and cotenant, that contrary to the recitals in the quitclaim deed
no consideration was paid therefor, and that on the same day the grantee
in the quitclaim deed executed back to each of the heirs at law, with the
sole exception of defendant appellee, separate tracts agreed upon as their
respective shares of the lands, that the grantee in .the quitclaim deed re-
tained record title to his part of the lands and to the part that, under the
partition agreement, he should have deeded to defendant appellee as her
share of the lands, the tracts being contiguous. The grantee in the quit-
claim deed executed a deed of trust on the whole tract retained by him.
Upon default in the payment of the debt secured by the deed of trust, the
trustee foreclosed under its terms, and the *cestui que trust* bid in the
property for the amount of the debt, plus interest and taxes advanced, and
instituted this action for possession of the entire tract. Defendant appel-
lee set up the partition agreement and sought to establish her title to
one-half the tract, claiming a parol trust therein under the facts. The
grantee in the quitclaim deed filed answer admitting the trust and alleg-
ing that the tract agreed to be reconveyed to defendant appellee was
included in the deed of trust by mistake. *Held:* Parol evidence is com-
petent to establish the conditional delivery of the quitclaim deed by de-
fendant appellee under her claim of a resulting trust in the lands, the
rule that a grantor in a warranty deed may not set up a parol trust in
his favor having no application to the facts disclosed by the record.

2. Mortgages H m—Facts admitted held sufficient to sustain finding that
purchaser at sale was not innocent purchaser for value.

The pleadings and facts agreed in this case disclosed that heirs at law
owning certain lands by inheritance as tenants in common executed a
quitclaim deed to one of the heirs, their cotenant, who in turn deeded
separate tracts back to each of the heirs, except one, as their respective
shares of the lands, the parties seeking to partition the lands by this
means to save costs, the quitclaim deed being supported by no considera-
tion, although it contained a recital to the contrary. The grantee in the
quitclaim deed retained record title to the part of the lands agreed upon
as his share, and the part agreed upon as the share of the heir, the de-
fendant appellee, to whom no reconveyance was made. Defendant ap-
pellee thereafter went into possession of the tract agreed upon as her
share of the lands, by building a house thereon and moving her daughter
therein as her tenant. Thereafter the grantee excuted a deed of trust on
the entire tract to which record title was retained by him, and upon de-
fault, the deed of trust was foreclosed and the land purchased at the sale
by the *cestui que trust* for the amount of the debt plus interest and taxes

advanced. Defendant appellee claims one-half of the tract under a resulting trust, and gave notice at the sale of her claim. *Held:* The record is sufficient to sustain the finding of the court that the *cestui* purchasing at the foreclosure sale is not an innocent purchaser for value, it appearing that defendant appellee gave actual notice at the sale, and there being badges of constructive notice in the record, possession by defendant appellee and the erection of the house, and the recognition of the trust by the grantee in the quitclaim deed.

APPEAL by plaintiff and defendant Bettie Dial from *Sinclair, J.,* 8 August, 1935. From ROBESON. Affirmed.

The plaintiff and defendant Bettie Dial agreed, in writing, upon a statement of facts which were submitted to his Honor, N. A. Sinclair, holding courts in the 9th Judicial District, in the following words, to wit:

"*Statement of Agreed Case:* The plaintiff and the defendant Bettie Dial agree that the following shall constitute the facts in the foregoing case, and submit the following facts agreed to his Honor, N. A. Sinclair, judge holding courts in the 9th Judicial District. Both plaintiff and defendant Bettie Dial state that the facts involved in this case are as follows, and present the court that their relative rights under the foregoing statement of facts be determined and judgment rendered accordingly.

"1. It is admitted that summons in the above entitled cause was issued 9 March, 1933; duly served on same date, returnable within 30 days therefrom.

"2. It is agreed that the pleadings in this cause and other papers heretofore filed are taken as a part of this statement of agreed facts.

"3. That heretofore Willis Dial died seized and possessed of approximately 585 acres of land located in Pembroke Township, Robeson County, and left surviving him the following named heirs at law, to wit: Nathaniel Dial, John J. Dial, Sallie Sampson, Bettie Dial, Darcus Oxendine, W. W. Dial, Peter Dial, Jr., and widow, Rebecca Dial.

"That Willis Dial died about 1893, intestate. That the above named heirs at law of Willis Dial remained on said 585-acre tract of land as tenants in common up until about 12 February, 1906. That on or about 12 February, 1906, the above named heirs at law of Willis Dial, deceased, met at the old home place and agreed upon a division of the 585-acre tract of land, and a surveyor was procured by the name of Matthews, and that thereupon the lands were surveyed into seven plots, and that each heir at law of Willis Dial, deceased, was to receive his share of said 585-acre tract as per the survey. That in order to facilitate a division of the lands and to save court expense it was agreed between

all the heirs at law of Willis Dial, above named, including Bettie Dial, the defendant herein, that they should execute to Peter Dial, Jr., a quitclaim deed for the 585 acres of land for the sole purpose of Peter Dial, Jr., in turn to convey back to each of the heirs at law of Willis Dial, deceased, their respective shares of 585-acre tract, a copy of which said deed is hereto attached and marked 'Exhibit A.' That while the quitclaim deed hereto attached recites a consideration of ten dollars ($10.00), there was really no consideration paid, but that said deed was made solely for the purpose of facilitating the division and to save cost of court in the division of the lands thereof, and for no other purpose than for the division of the land. That the plaintiff had no actual knowledge of the existence of the parol agreement above recited, or the fact that there was no consideration actually paid in the deed from all of the heirs at law of Willis Dial, deceased, to Peter Dial, Jr. That the said deeds to all of the heirs at law of Willis Dial, deceased, pursuant to the agreement to reconvey by Peter Dial, Jr., to the heirs at law of Willis Dial, deceased, were promptly executed and recorded, as will of record appear, except the deed to Bettie Dial for her share of the 585 acres of land, which deed was never executed.

"4. That Peter Dial, Jr., at that time was unmarried, and Bettie Dial, one of the defendants herein, was also unmarried. That the shares of land that were agreed to be allotted in the division to Peter Dial, Jr., and Bettie Dial, contained about 182.4 acres, of which amount it was agreed Peter Dial, Jr., was to receive half and Bettie Dial was to receive half.

"5. That at the time of the division of the lands and the execution of the deeds, above referred to, Bettie Dial and Peter Dial, Jr., resided in the old home house, which was included in the 182.4-acre tract, and the home house was situate on that portion of the 182.4 acres that Peter Dial, Jr., was to receive as his share of the land. That immediately after the division and the execution of the deeds, both from the heirs at law of Willis Dial to Peter Dial, Jr., and from Peter Dial, Jr., back to the heirs at law under the parol agreement between them, Bettie Dial and Peter Dial, Jr., remained in the old home house up until about 1910, during which time there was no change in the occupancy of the 182.4 acres as between Bettie Dial and Peter Dial, Jr., and it remained the same as before the execution of the quitclaim deed; that in 1910 Bettie Dial erected a house on the northern portion of the 182.4-acre tract, it being the portion that was to go to her and which she claimed under the division, and moved, or caused to be moved, her daughter into said house, and that Bettie Dial has remained in possession, either herself or her tenants or some member of her family, in the northern portion of the 182.4-acre tract since 1910, during which time she has

cultivated, rented, and kept the lands in her possession, using the same in such a way as the land in its nature was susceptible.

"6. That Bettie Dial was born and reared upon the lands above mentioned, and has always lived upon said lands, as above stated, and was in possession thereof at the time of the execution of the deed of trust herein referred to, which is recorded in Book 75, at page 147, and made a part hereof in as full and ample a manner as if the same were herein copied, and did not enter into the execution of said deed of trust and did not know anything about the execution thereof, and that she is, and was then, and was at the time of the institution of this action, in the possession of the northern portion thereof.

"7. That about 1910 the defendant Bettie Dial caused to be erected on that portion of lands that she was to receive under the division a house and, as heretofore stated, moved her daughter into same during 1910, but Bettie Dial remained at the old home herself, living with her brother, Peter Dial, Jr., until about 1918, during which time, from 1910, she had her daughter and other tenants living in the house built in 1910 on the lands that she cleared, to wit, the northern portion thereof.

"8. That after Peter Dial, Jr., had conveyed to his brothers and sisters other than Bettie Dial their portion or portions of the 585-acre tract, the 182.4 acres were marked off in one body by metes and bounds and by visible lines, but no actual dividing line between Peter and Bettie Dial was ever marked through the 182.4-acre tract.

"9. That on or about 13 June, 1927, while Bettie Dial was in possession of the northern portion of the 182.4-acre tract, Peter Dial, Jr., and wife made, executed, and delivered to Raleigh Banking and Trust Company their deed of trust embracing the 182.4 acres of land, it being the same set out and described in the complaint in this cause, to secure the payment of $2,500, and at the same time and as a part of the same transaction Peter Dial, Jr., and wife, Sarah Dial, executed their bond in the sum of $2,500, secured by said deed of trust; that Bettie Dial did not sign the deed of trust or bond above referred to, and did not know anything about the execution thereof, and did not receive any of the $2,500.

"10. That default was made in the deed of trust above referred to, and the lands advertised to be sold on 23 July, 1931, at the courthouse door in Lumberton, N. C., at which time and place Bettie Dial, seeing the advertisement in the newspaper, appeared and objected to the sale of that portion of the lands she claimed, to wit, the northern half thereof, and that pursuant to the sale the trustee executed a deed to the Metropolitan Life Insurance Company, in which deed is embraced the entire tract of 182.4 acres, said deed duly recorded in Book 8-E, page 419, under which deed the plaintiff claims it is entitled to be declared

the owner in fee simple of the entire tract of land set out and described in the complaint.

"11. That said lands were listed for taxation by Peter Dial, Jr., since 1909, and in 1932 it appears from the tax list that Peter Dial listed 120 acres and Bettie Dial 60 acres.

"12. That the Metropolitan Life Insurance Company has paid the taxes upon the entire 182.4 acres of land since 1926 to 1934, both years inclusive.

"13. That Peter Dial, Jr., lived in the old home house, which is situate on the southern portion of said lands, all of his life, and was so living there at the time of the execution of the deed of trust and the sale of the lands thereunder, hereinabove referred to, and also up until the institution of this action and until the appointment of a receiver for the property, and since which date he has rented the same from the receiver. Respectfully submitted:

"Winston & Tucker, by Granbery Tucker; Lee & Lee, attorneys for plaintiff.

"David H. Fuller and Britt & Britt, attorneys for defendant.

"Bettie Dial. Bettie Dial (her mark). Witness as to Bettie Dial, D. G. Dial. Bettie Dial, defendant."

"EXHIBIT A.

"NORTH CAROLINA—ROBESON COUNTY.

"This deed, made this 12 February, 1906, by Nathaniel Dial and wife, Mary M. Dial, John J. Dial, Nathaniel Sampson and wife, Sallie Sampson, Elizabeth Dial, Jonathan Oxendine and wife, Dorcas Oxendine, W. W. Dial and wife, Louise Dial, parties of the first part, to Peter Dial, Jr., party of the second part:

"WITNESSETH: That the said parties of the first part, for good causes and considerations, and especially for ten dollars, received for their full satisfaction, have remised, released, and quitclaimed, and by these presents do, for themselves and their heirs, executors, and administrators, justly and absolutely remise, release, and forever quitclaim unto the said Peter Dial, Jr., and to his heirs and assigns all their right and title as they, the said parties of first part, have or ought to have in or to all that tract or parcel of land in Burnt Swamp Township, Robeson County, North Carolina, adjoining the lands of Wash Lowrie, N. A. Brown, and others, and bounded as follows:

"Beginning at a stake by two dead pines and runs as Wash Lowrie's line south 85 east 33.30 chains to his corner at the end of a ditch; thence as his line south 2 west 65.50 chains to his corner, a stake by a pine; thence with Oxendine's and McPherson's lines north 75 east 90

chains to the run of Bear Swamp at the mouth of a ditch on east side of swamp; thence up the run of said swamp to N. A. Brown's line; thence as his line south 70 west 27 chains to his corner; thence south 54 west 38.50 chains to the beginning, containing 585 acres, more or less.

"To HAVE AND TO HOLD the above described tract or parcel of land unto the said Peter Dial, Jr., his heirs and assigns, and to his only use and behoof in fee simple forever.

"In testimony whereof, the said parties of the first part have hereto set their hands and seals, this day and year above written.

"Signed: Nathaniel × Dial (Seal); Mary M. × Dial (Seal); John J. × Dial (Seal); Nathaniel × Sampson (Seal); Sallie × Sampson (Seal); Elizabeth × Dial (Seal); Jonathan × Oxendine (Seal); Dorcas × Oxendine (Seal); W. W. × Dial (Seal); Louise × Dial (Seal). (All of the above signatures were by his or her mark.)

"Probate in regular form. Registered 30 April, 1906, in Book 5-A, at page 469. Robeson County Registry."

The judgment of the court below was as follows:

"This cause was submitted to the court upon the specific facts set out in the agreed statement of facts and 'the pleadings in this cause and other papers hereinbefore filed are taken as part of this statement of agreed facts.'

"The plaintiff seeks to recover the immediate possession of the land described in the complaint, and other relief. The defendants admit that the plaintiff is entitled to recover one-half (the southern half) of the said land, but contend that the northern half of said land is the property of the defendant Bettie Dial, and is held in trust for her by her codefendant, Peter Dial, Jr.

"The plaintiff contends that Bettie Dial cannot be heard to set up a parol trust upon her deed absolute upon its face, because she is the grantor, and that in any event she is barred from doing so by the statute of limitations.

"The court holds that while it is a well recognized rule of law that a grantor cannot attempt to engraft a parol trust upon his absolute deed, there are exceptions to the rule dependent upon circumstances. The grantor would not be permitted to *introduce* evidence outside the deed for the purpose *over objection;* but in the instant case the plaintiff did not object to such evidence, but agreed that the court should consider facts and circumstances, which in the opinion of the court takes the case out from the operation of the general rule and establishes a parol trust. The deed in question does not give a clear indication upon its face that it intended to convey an absolute title, but strongly indicates that it was given for some other purpose.

"The court further finds that Bettie Dial, while joining as grantor with the five cotenants other than herself and Peter Dial, Jr., was also a grantee to the extent that the common deed conveyed to her in trust the interest of the other five cotenants in the 182.4-acre tract, and it is admitted that she joined in the common deed for the purpose of conveying her interest in the part of the land that the trustee was to convey to those five cotenants for the purpose of partition.

"The answer of Peter Dial, Jr., asserts that he holds the land in controversy under trust for Bettie Dial and his statement as part of the 'pleadings' is to be 'taken as part of the agreed facts'; and he is grantee in the deed and has the right to set up a parol trust in order to perform his duty as trustee in execution of his trust.

"The court is of the opinion, under all the circumstances in evidence, that Bettie Dial is not barred by the statute of limitations, nor does she hold by adverse possession; and the court is also of the opinion that the plaintiff is not an innocent taker for value without notice.

"Upon the consideration of the evidence and the foregoing findings of law: It is considered, adjudged, and decreed:

"1st. That the plaintiff is the owner and entitled to the immediate possession of the southern half of the land described in the complaint.

"2d. That the plaintiff is not the owner and is not entitled to the possession of the land claimed by Bettie Dial, the northern half of the land described in the complaint.

"3d. That the northern half of said tract of land is held in trust by Peter Dial, Jr., for Bettie Dial, and he is hereby ordered and directed to convey it to her in fee simple.

"4th. That a reference be had to ascertain what amount, if any, plaintiff has been damaged by Peter Dial, Jr., in withholding possession from plaintiff, and what amount plaintiff is entitled to recover of Peter Dial, Jr., and Bettie Dial, respectively, as liens upon their respective portions of said land for taxes paid; and C. B. Skipper is hereby appointed referee for that purpose, and directed to report his findings of fact and law to the court, without delay.

"5th. That the defendant Bettie Dial recover of the plaintiff her costs herein expended, to be taxed by the clerk.

"And this cause retained for further orders. This 8 August, 1935. N. A. Sinclair, Judge presiding."

The plaintiff's only exception and assignment of error was to the signing of the judgment. The defendant Bettie Dial's only exception and assignment of error was to the finding of his Honor, N. A. Sinclair, that she does not hold the land by adverse possession.

*Winston & Tucker and Lee & Lee for plaintiff.*
*David H. Fuller, W. S. Britt, and J. C. King for defendant.*

CLARKSON, J.   Willis Dial, father of the defendant Bettie Dial, died intestate about 1893, seized and possessed of 585 acres of land in Pembroke Township, Robeson County, North Carolina, and left surviving him seven children.

These children were all living on the land at the time of their father's death, and, in 1906, desiring to effect a division in a simple and inexpensive method, they quitclaimed to Peter Dial, Jr., their brother and cotenant, these lands for the sole and specific purpose of dividing the same according to agreed shares.   The defendant Bettie Dial, then a young woman, joined in this quitclaim deed.

Peter Dial, Jr., carrying out the provisions of the agreement to divide the land, promptly executed and delivered unto all the heirs of Willis Dial, except Bettie, deeds for their respective shares in and to this land.

Peter Dial, Jr., and the defendant Bettie Dial lived on together in the old home, which was situated on the 182.4 acres (the subject matter of this action), which represented the remainder of the 585 acres after conveying to the other heirs their respective shares.   The use and occupancy of these 182.4 acres by Peter and Bettie were under exactly the same circumstances and in the same manner after the execution of the quitclaim deed in 1906, as it was before that time, Bettie claiming the northern half and Peter claiming the southern half of the land.

In 1910, Bettie erected a house on the northern half of this land, and has continued in possession, not only of the house, but also the northern half of this land since that time.   Both had an undivided interest therein, which was recognized and respected by the other, and it was understood between them that Bettie, upon a division, was to get the northern half and Peter the southern half thereof.

Bettie Dial was born on this land, was living in the old home at the time of her father's death, and has lived on this land until the present day; she has never executed but one paper, which she did by making her mark, she being unable to read and write, and that one paper was executed by her in the belief that it was necessary in order for her to have her interest, her inheritance, in her father's estate set aside to her; she has never received a deed from Peter Dial, Jr.; has never received a cent from the loan made by the plaintiff to Peter Dial, Jr.; has always claimed her interest in the 182.4 acres which are the subject matter of this action, and has shown that she claimed the same by cultivating the northern portion thereof, renting the same out, receiving the rents therefor, and putting the said northern portion to such use as the nature thereof would permit.

Peter Dial, Jr., and Bettie Dial lived on the 182.4 acres of land, which had definite, known, and visible boundaries.   Although there was no actual dividing line between Peter and Bettie, as between them, it was

agreed, upon a division, that she was to have the northern portion and he the southern portion of the 182.4 acres.

Peter Dial, Jr., in his answer admitted that although the title to the land described in the complaint was in his name, yet it was that portion of the estate of his father intended for himself and his sister, Bettie Dial, and that he only claimed one-half of the same; that he lived on one portion of said land and she upon another; and that he had, through an honest mistake, given an encumbrance upon the entire 182.4 acres when he only intended to give an encumbrance upon his interest therein.

On 13 June, 1927, Peter Dial, Jr., and wife, executed to the Raleigh Banking and Trust Company a deed of trust on the entire 182.4-acre tract to secure a loan of $2,500 made to him by plaintiff. On account of default in payment the deed of trust was foreclosed and the land sold thereunder on 23 July, 1931, plaintiff becoming the purchaser at said sale for the amount of its debt, plus accrued interest and taxes, the purchase price being $800.00 in excess of the original debt. Defendant Bettie Dial claims one-half of the tract of land, contending that Peter Dial, Jr., had verbally agreed to transfer legal title to her for one-half of the said tract. Plaintiff instituted this action to recover possession under its title obtained as purchaser at the foreclosure sale.

The court below held: "The court is of the opinion, under all the circumstances in evidence, that Bettie Dial is not barred by the statute of limitations, nor does she hold by adverse possession; and the court is also of the opinion that the plaintiff is not an innocent taker for value without notice." We think, under the facts and circumstances of this case, the holding of the court below correct.

In *Gaylord v. Gaylord,* 150 N. C., 222 (225-6), is the following: "The alleged deed recites a valuable consideration paid by defendant Sam Gaylord, the grantee in the deed; contains a *habendum* 'to have and to hold the said tract of land, free and clear of all privileges and appurtenances thereunto belonging, to the said Sam M. Gaylord and his heirs in fee simple, forever,' and also the covenants, 'that the grantor is seized of the premises in fee simple and hath the right to convey the same; that they are free from all encumbrances, and that the grantor will warrant and defend the title to the same against the lawful claim of all persons,' etc.; and the authorities are to the effect that in a deed of this character, giving on the face clear indication that an absolute estate was intended to pass, either by the recital of a valuable consideration paid or by an express covenant to warrant and defend the title, no trust would be implied or result in favor of the grantor by reason of the circumstance that no consideration was in fact paid (citing numerous authorities). . . . (p. 230) The main current of decision is in this direction, and established that a trust cannot be fastened on an

absolute deed by evidence that the grantee paid no consideration, or that he agreed to take and hold the premises from the grantor (citing authorities). . . . (p. 231) The same position is very well expressed by *Green, J.,* in *Cain v. Cox, supra* (23 W. Va., 594, 605) : 'In this state of facts, what was the operation of this deed of 1854, whereby Rezin Cain conveyed this tract of land to his sisters upon a parol trust for his own use? In *Troll v. Carter,* 15 W. Va., 578, this Court decided: "If land be conveyed by a deed of bargain and sale for a merely nominal consideration, the courts of equity will not receive parol evidence to prove that the grantee agreed to hold the land for the grantor's use, as the deed in such a case must have been made for the express purpose of divesting the grantor of his title and vesting the same in the grantee. Such parol evidence, if admitted, would defeat the very purpose for which the deed was made, and must be regarded as contradicting the deed, and the general rule of evidence requires in such cases the rejection of parol evidence." ' "

The principle in the *Gaylord case, supra,* is well settled law in this jurisdiction. It is not applicable in the present action.

In 1893 Willis Dial died seized and possessed of some 585 acres of land, which descended to his heirs at law—some seven in number. They were tenants in common of the entire tract. On 12 February, 1906, they agreed upon a division and the land was surveyed in seven plots, and each heir at law was to receive his or her share of the said 585 acres of land, as per the survey. To facilitate a division, without consideration, a quitclaim deed of the land was made to Peter Dial, Jr., who in turn conveyed to each heir at law (as he had agreed to do) his or her share, with the exception of Bettie Dial. He neglected to do this, although Bettie Dial was recognized by Peter Dial, Jr., at all times as the owner of one-half of the 182.4 acres, and was in possession with her brother, Peter Dial, Jr., and later in possession of the northern half, in the division with her brother.

In *Power Co. v. Taylor,* 191 N. C., 329 (332), is the following: "Partition deeds between tenants in common operate only to sever the unity of possession and convey no title. *Harrington v. Rawls,* 136 N. C., 65; *Harrison v. Ray,* 108 N. C., 215." *Burroughs v. Womble,* 205 N. C., 432.

In *Wallace v. Phillips,* 195 N. C., 665 (670), it is said: "Ordinarily, when there is a partition of realty, by deed or action, between tenants in common, it only severs the unity of possession and conveys no title." Parol evidence is permissible to show the facts constituting the possession, manner of acquiring it, and the length of time the possession has existed. *Lewis v. Lewis,* 192 N. C., 267 (268).

The deed in the present action was executed and delivered for the purpose of a partition between the heirs at law—theretofore agreed upon. The grantee, Peter Dial, Jr., carried out the agreement as to five of the heirs at law, but failed to convey to Bettie Dial. Peter Dial, Jr., was a naked trustee—no consideration passed. It was a conditional delivery—this could be shown by parol. *Jefferson Standard Life Ins. Co. v. Morehead, ante,* 174. In fact, Peter Dial, Jr., in his answer says: "That the title to said land was in the name of this defendant, being that portion of the estate of his father intended for himself and his sister, Bettie Dial, the codefendant, and that he held the same in trust, this defendant living on one portion of said lands, and his said codefendant on another portion thereof, and that at the time of the execution of the said deed of trust, this defendant was under the impression that he had a right to execute a mortgage or deed of trust upon his interest in said land, which was about 100 acres, and that he thought when he signed said deed of trust that he was only executing the same against his said interest," etc.

In the judgment is the following: "The answer of Peter Dial, Jr., asserts that he holds the land in controversy under trust for Bettie Dial and his statement as part of the 'pleadings' is to be 'taken as part of the agreed facts'; and he is grantee in the deed and has the right to set up a parol trust in order to perform his duty as trustee in execution of his trust."

On this aspect of the case plaintiff in its brief does not state this as one of the questions involved, nor is it considered in its brief. It does except to the judgment.

The second question involved: "Was the court in error in holding upon the agreed statement of facts that plaintiff is not an innocent purchaser for value without notice?" We think not.

In the findings of fact is the following: "That default was made in the deed of trust above referred to, and the lands advertised to be sold on 23 July, 1931, at the courthouse door in Lumberton, N. C., at which time and place Bettie Dial, seeing the advertisement in the newspaper, appeared and objected to the sale of that portion of the lands she claimed, to wit, the northern half thereof, and that pursuant to the sale the trustee executed a deed to the Metropolitan Life Insurance Company, in which deed is embraced the entire tract of 182.4 acres, said deed duly recorded in Book 8-E, page 419, under which deed the plaintiff claims it is entitled to be declared the owner in fee simple of the entire tract of land set out and described in the complaint." Before plaintiff purchased the land it was notified by Bettie Dial of her claim.

In the findings of fact is also the following: "That the plaintiff had no actual knowledge of the existence of the parol agreement above

recited, or the fact that there was no consideration actually paid in the deed from all of the heirs at law of Willis Dial, deceased, to Peter Dial, Jr."

In *Wynn v. Grant,* 166 N. C., 39 (45), it is said: " 'Constructive notice from the possession of the means of knowledge will have the effect of notice, although the party was actually ignorant, merely because he would not investigate. It is well settled that if *anything appears* to a party calculated to attract attention or stimulate inquiry, the person is affected *with knowledge* of all the inquiry would have disclosed.' *Bunting v. Ricks,* 22 N. C., 130; *Le Neve v. Le Neve,* 2 White and Tudor's Leading Cases in Equity, 144; *Wittkowsky v. Gidney,* 124 N. C., 437; *Blackwood v. Jones,* 57 N. C., 54; *May v. Hanks,* 62 N. C., 310; *McIver v. Hardware Co.,* 144 N. C., 478. The rule is thus put in *Wilson v. Taylor,* 154 N. C., 211: 'A party who may be affected by notice must exercise ordinary care to ascertain the facts, and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired if he had made the necessary effort to discover the truth,' citing *Hulbert v. Douglas,* 94 N. C., 122; *Bryan v. Hodges,* 107 N. C., 492." *West v. Jackson,* 198 N. C., 693 (694); *Austin v. George,* 201 N. C., 380 (381); *Hargett v. Lee,* 206 N. C., 536 (539).

Some of the badges of constructive notice are as follows:

(a) The ownership of 585 acres by the heirs of Willis Dial, deceased.

(b) That there were seven heirs of Willis Dial, among them the defendant Bettie Dial.

(c) The execution, not of a warranty deed, but a quitclaim deed to these 585 acres by six of these heirs to the seventh heir, Peter Dial, Jr., for "good causes and consideration, and especially for ten dollars."

(d) Deeds by this seventh heir, Peter, on the same day the said quitclaim deed was executed to each of five of these heirs for a portion of the 585 acres, but no deed to Bettie.

(e) The continued possession of the defendant Bettie, the sixth grantor in said quitclaim deed, of a portion of the 585 acres, which had not been conveyed to the other five grantors, her possession and use being the same after as it was before the execution of said quitclaim deed in 1906.

(f) The erection of a house by the defendant Bettie on the northern half of the remainder of 585 acres (the 182.4-acre tract, which is the subject matter of this action), and her full occupation and use of said house together with the northern half of these lands as her own; claiming it, cultivating it, renting it, and in every way using it as her own.

(g) Recognition by the grantee Peter of her interest in said lands.

(h) And finally, notice given by Bettie at the foreclosure sale of the land when the plaintiff became the purchaser.

In *Grimes v. Andrews,* 170 N. C., 515 (524), we find: "The judge left the tenth issue undisturbed, we presume, for the purpose of ascertaining whether the defendants had been in possession, claiming the land as their own, as bearing on the question of notice to plaintiff of defendant's equity, growing out of the alleged parol trust, the general rule being that possession constitutes such notice. *Justice Dillard* said, in *Heyer v. Beatty,* 83 N. C., 289: 'The rule in equity undoubtedly is that a party taking with notice of an equity takes subject to that equity; that is to say, he is assumed to take and hold only such interest in the property conveyed as his vendor might honestly dispose of, having due regard to the equities existing against him in favor of others. Adams Eq., 151; *Webber v. Taylor,* 55 N. C., 9; *Maxwell v. Wallace,* 45 N. C., 251. And the kind of notice spoken of in said rule may be an actual or constructive notice. In this case there is no pretense of actual notice to the plaintiff of the right claimed by defendant, but it is plainly implied, from the terms in which the instruction was asked, that the defendant claimed only to affect the legal title of the plaintiff with a trust from a notice by construction from the mere fact of his possession at the time of the sale. Possession is suggestive of title or right in the possessor, and a prudent man should and would inquire into such apparent right before trading with another; and if he do not, it is but just to the rights of the party in possession to hold the purchaser as affected with notice of the equities in his favor,' " citing numerous authorities.

This matter, under the statement of agreed case, was left to the court below, who found "that the plaintiff is not an innocent taker for value without notice," and there was evidence to support the finding.

For the reasons given, the judgment of the court below is

Affirmed.