# H. and D. E. Dickson *v.* M. B. Hamer *et al.*

A forth-coming bond, signed, sealed, and delivered to the sheriff in blank, to be subsequently filled up by him in its essential parts, is void.*

The facts of this case sufficiently appear from the argument of counsel and the opinion of the chancellor.

RUCKS and YERGER for the motion.

This bill was filed to injoin two judgments on forth-coming bonds, upon the grounds that the bonds were signed in blank, and afterwards filled up without authority, and in cases to which they were not intended to apply.

The chancellor, at the March term, 1840, directed an issue to inquire,

First. Whether the forth-coming bonds were signed and delivered in blank?

Second. What were those blanks?

Third. Whether the obligors at the time of delivery of said bonds gave any special authority to any one to fill them up?

Fourth. If any such special authority was given, whether it was exercised by the person to whom it was given, and in conformity thereto?

The issue was tried at the May term of the circuit court for Yazoo county, 1841, when the jury found,

First. That the bonds were signed and delivered in blank.

Second. When so signed and delivered they were mere blank printed forms, containing neither the names, descriptions of either

---

* See the case of Williams *v.* Crutcher, 5 Howard's Rep. p. 71.

of the parties, the writs of fi. fa., nor the sums mentioned in the penalty of said bond, nor any description of the writs on which said bonds were taken, nor the sums of money commanded to be made by said writs. The said bonds were also blank as to the property levied on, to whom it belonged, and also as to the time it should be forth-coming.

Third. That the obligors did give authority to fill up the bonds.

Fourth. That the authority was properly exercised in filling up said bonds, and in conformity thereto.

The judge certifies that he has sent up all the evidence which was given to the jury on the trial of said issues. Upon referring to that evidence it will be seen that the jury decided the third and fourth issues contrary to the evidence. There was, in fact, no evidence to support that finding, but the evidence was directly against it.

Thomas Hall was deputy sheriff under Parham Buford; knows the bonds were blank; filled up one of them himself for $5082 26; says he obtained the signatures of the obligors to said bonds and to two other bonds at the same time; that they were not filled up by any directions from the obligors, but from the authority supposed to be derived from the signatures.

A. G. Harris was present at the time said bonds were executed by Hugh Dickson; there were four of them; Dickson said nothing about bonding executions against him as executor or administrator; the bonds were all blank; no particular case was mentioned but that of Rawlings & Co.

A. H. Murphy was present when Hugh Dickson was called upon to give forth-coming bonds. It was done in haste. Witness did not see the obligors sign the bonds, though he filled up one of them, and made the return on the execution.

Parham Buford says the bonds were blank when signed by the obligors, except the printed part. He is asked if the obligors gave any special authority to any one to fill them up, and answers, "they did." He was then asked if that special authority was exercised by the person to whom it was given. To this question he answers by describing the manner in which said bonds came to be signed in blank by Hugh Dickson, who, he says, "told me to

fill them up;" and he says said bonds were filled up according to the authority given by Hugh Dickson to fill them up, according to his understanding of that authority, but that he did not himself fill up either of said bonds.

Thomas Hall filled up one of the bonds; tells us himself that he had no authority for doing so, but that which he supposed to be derived from the signatures themselves. A. H. Murphy filled up the other. There is no pretence that he had any more authority for doing so than Mr. Hall had.

Parham Buford proves a special authority from Hugh Dickson to himself to fill them, to wit: that Hugh Dickson told him to do so; but he did not fill up either of them.

How then could the jury say that the obligors gave authority to fill up the bonds, and that the bonds were properly filled up in conformity to the authority?

First. This is no response to the issue, which inquires for a special authority. The jury take a distinction between a general authority and a special authority. They agree with Hall and Murphy that the signatures themselves gave a general authority to fill them up. If the jury had answered as to a special authority, they would have said Parham Buford was specially authorized by Hugh Dickson to fill them up, but that they were not filled in conformity to that authority, but were filled up, the one by Hall, the other by Murphy. I therefore insist that the verdict is no response as to the third or fourth issues. If the verdict should be construed as deciding that the obligors gave authority to Hall and Murphy to fill up the respective bonds, then we insist that the verdict has no evidence to support it, but is directly against the whole evidence upon that subject. A verdict without evidence cannot stand at law, much less a verdict contrary to the whole evidence.

The court of law which tried these issues had no supervisory power over this verdict. That court did right in sending the whole evidence to this court, to be acted upon by the chancellor. There is a distinction between a case where this court thinks proper to take the opinion of a court of law upon a mere legal question, and a case in which this court directs an issue of fact. In the former case the opinion of the court of law is regarded as

conclusive, whether obtained by verdict or otherwise; but in the latter case this court reserves to itself the right to review what passes at law, and regards the judge's report with a view to collect information to enable it to proceed satisfactorily. Bootle v. Blundell, 19 Ves. 499.

Taking the evidence and the verdict together, it is clear beyond doubt, that these bonds were signed in blank; that complainants did not know to what cases the respective bonds were intended to be applied; that if any authority was given to fill them up, (which is doubtful,) it was a mere parol authority, and the bonds were not filled up under it, nor in pursuance of it. The High Court of Errors and Appeals, in the case of Williams v. Crutcher, 5 How. 71, have put this question entirely at rest. They decide that all such bonds as these are absolutely null and void. They would have been equally void if they had been filled up by Buford himself, in pursuance of a parol authority or direction. This issue would not have been directed, if this question of law had been settled by the High Court before that time.

The CHANCELLOR.

At the time I directed an issue in this case, the decision of the High Court of Errors, in the case of Williams v. Crutcher, 5 How. Rep. 71, had not been made. When first looking into the papers of the case, although it appeared clear beyond doubt that the forthcoming bond which the complainants seek to have declared void, was blank in its most essential parts, when it was signed, yet as I had some doubt, from the testimony, whether verbal authority was not given to the officer taking the bond to fill it up, in conformity with the purpose for which it was intended, I directed an issue mainly to ascertain that fact. Some examination of the authorities upon the question, had led me to the conclusion that the bond although signed in blank would be good, if it should turn out that an express authority was given at the time, to fill it up for a specified purpose, even though that authority rested in mere parol. I had repeatedly decided, after full examination, that mere implied authority in such cases was not sufficient to give validity to a bond so filled up. But examining the question as one of principle, no reason occurred to me why parties signing and sealing a bond, with

blanks left in it, might not at the time give express verbal authority to another person to fill those blanks so as to make the bond obligatory.

That an agent cannot bind his principal by signing and sealing an instrument in the name of his principal, unless his authority to do so was created by an instrument of equal dignity, is universally admitted. The authority in such case must be under seal, and the reason given is, that it would be unreasonable that the power to make so solemn an instrument should be transferred by any medium less solemn than the act to be done under it. It is the seal, then, which no one may make for another, without authority to do so derived through the medium of a seal. And this occurred to me to be the extent and limit of the rule. It is quite certain that acts, other than the sealing of a deed, but which are still necessary to its validity, may be performed by a mere verbal agent. For example : it is essential to the validity of a deed, that it should be delivered ; but this may be done by a third person, acting under parol authority from the grantor, Chadwick *et al. v.* Webber *et al.* 3 Greenleaf's Rep. 141. Verplank *v.* Sterry, 12 John 536.

In the case before me it appears that the bonds were signed, sealed and delivered. These were deliberate acts, done in part completion of the bonds; and nothing remained but to fill out the blanks left in them. The filling these blanks was an act of less solemnity than the signing and sealing, and it appeared to me, reasoning from the analogies of the law, that this might be done without at all violating the rule which requires an agent, when he attempts to bind his principal by a seal, to have the authority of a seal for so doing. Here no signing or sealing was to be done; that ceremony had been already performed by the obligors of the bond. I thought, therefore, that there was no act to be done in the case by an agent, requiring the authority of a seal. In this view of the case I found myself sustained by the reported opinion of Lord Mansfield as cited in 1 Aust. 228, and by the opinions of the supreme courts of New-York and Pennsylvania, as reported in 8th Cowan, 118, and in 17th Serg. and Rawle, 438. I was aware that the question had been decided differently in several of the states. A different rule has been at least laid down by the courts of Tennessee and North Carolina, and Judge Trotter in delivering

the opinion of the supreme court of this state, in the case before referred to, sustains that view of the law. Nothing remains for me but to follow that decision; in doing which it becomes unnecessary for me to enquire whether the finding of the jury under the issue directed is sustained by the testimony or not, as according to that decision, the enquiry which was made is wholly immaterial to the case. I shall accordingly direct that the finding of the jury, and the order directing an issue to be tried, be set aside, and that a decree be prepared, declaring the forth-coming bonds made by the complainants, void, and perpetually enjoining any execution thereon. The costs of the case must be paid by the complainant.