## HAINES *vs.* POHLMANN and others.

1. It is well settled that a debtor is authorized to infer that an attorney or agent who has been employed to make a loan, is empowered to receive both principal and interest, from his having possession of the bond and mortgage given for the loan, or of the bond only. But the inference in such cases is founded on the custody of the securities, and it ceases whenever they are withdrawn by the creditor; and it is incumbent on the debtor who makes payment to the attorney or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made.

2. Payments made to an agent on account of principal and interest of a bond, allowed the debtor, the action of the creditor estopping him from denying the agency, and relieving the debtor from seeing to it that the agent had possession of the securities when the payments were made.

On final hearing on pleadings and proofs.

*Mr. J. Flemming,* for complainant.

*Mr. E. S. Cowles,* for Pohlmann.

THE CHANCELLOR.

The sole question between the parties to this suit (which is brought for foreclosure and sale of mortgaged premises in Jersey City,) is, whether two payments, one of principal, $500,

and the other of interest, made on the mortgage in suit, shall be allowed or not. The mortgage, which was given May 1st, 1867, by Bernhard Pohlmann to Mulford M. Cavileer, to secure the payment of $2000 in three years from that date, with interest payable half yearly, contained a provision that the mortgagor might pay the principal at any time in sums of not less than $500 each. Mulford M. Cavileer died November 16th, 1867. By his will he gave all his property to his father, Peter Cavileer, in trust for the testator's brother, Morris, and appointed his father executor. When the mortgage in suit was given, one Sharon H. Waples, then an attorney-at-law of this state, practicing in Jersey City, was the attorney of the Cavileers, and generally attended to their legal affairs. In that transaction, he drew the papers which were executed by the Cavileers. He subsequently, on Thanksgiving day, 1868, married Amelia A. Cavileer, the daughter of Peter Cavileer. Very soon after the bond and mortgage were given, Peter Cavileer and all his family (which included Mulford,) except Amelia, left Jersey City and went to the county of Burlington, in this state, to reside, and there they resided at the time of Mulford's death, and they have ever since continued to reside there. Amelia, when the family went to Burlington county, remained in Jersey City, where she was engaged in business, and continued to reside there up to the time of her death, which occurred in March, 1869. The mortgage was given to secure part of the purchase money of the mortgaged premises, which were purchased by Pohlmann from Mulford M. Cavileer, in whom the title to them then was, and who, the complainant claims, was then the true and sole owner thereof. Pohlmann, however, when he made the purchase, on the advice of his counsel, insisted that Peter Cavileer should join in the contract for sale, it being supposed that he had some interest in the property, if indeed, the property was not in fact, wholly his. Peter Cavileer joined in and executed the contract, accordingly. Pohlmann is a German, having but an imperfect knowledge of our language. His son-in-law, William F. J. Prelle, conducted the

negotiations, and with his lawyer from New York, Mr. James Henderson, attended to the exchange of papers on the conveyance of the property to Pohlmann. Both Prelle and Henderson swear, that when the first payment (which was one of $200, and by the terms of the agreement, was to be made on the 1st of April, 1867,) was made, Mulford M. Cavileer, who received it, told them that Waples was authorized to act as their (meaning his and his father's) attorney, and attended to all their business and collected all their money. And Pohlmann, Prelle and Henderson all testify, that when the bond and mortgage were delivered, Mulford M. Cavileer was not present, but his father, with Waples, attended to the transfer of the papers, and that then Peter Cavileer told them that Waples was, or would be authorized to receive the money on the bond and mortgage. Pohlmann says, in answer to the question, " what, if anything, was said to you by Peter Cavileer at the time of the execution of the mortgage, about the payment of it or the interest of it ? " "He said that Mr. Waples would take the money for him and attend to all the business for him." Prelle says, in answer to a like question, " I asked him, (Peter Cavileer,) who was to receive the money, either interest or principal, or any part of it. He told me that Waples would be, or was authorized to receive it." And in answer to another question he says, that Peter Cavileer told him to pay the money on the mortgage to Waples, at his office, either interest or any part of the principal, according to agreement. Henderson testifies, that in answer to a question as to whom Pohlmann should pay the interest as it should become due on the mortgage, " Peter Cavileer said we should pay it to Mr. Waples ; he was authorized to receive it and receipt for it when it became due, and also the principal on the mortgage." When the interest became due on the 1st of November, 1867, Waples collected it and receipted for it. It appears that he then had the bond and mortgage. He wrote to Prelle, who was Pohlmann's agent in the matter, under date of October 19th, 1867, referring to the fact that the interest would be due on the mortgage on the first of next

month, and added, "The bond is at my office, and you can pay the interest to me and I will endorse it on the bond." This payment was endorsed by him on the bond. He collected the interest due on the 1st of May, 1868, and endorsed that also on the bond.

On the 16th of October, 1868, Prelle called on Waples at the latter's office in Jersey City, and proposed to pay $500 on account of the principal of the mortgage. He says that when he went to Waples and offered him the money, that was the first notice Waples had that he was going to pay it. Prelle says, he did not ask for the bond, but Waples told him of his own accord that he had it at home, and he promised to endorse the payment upon it, and that he, Prelle, signed the check which he had brought over in blank as to signature and name of payee, after Waples told him this. Subsequently Waples applied to him by letter, dated November 4th, 1868, for payment of the interest due on the first of that month. This Prelle paid him. Prelle says, that when he paid this money he did not ask Waples for the bond; that Waples said he had the bond at home and would endorse the interest on it. In the winter of 1868–9, Amelia was taken sick. Her mother came to Jersey City to attend her and remained there till within about two weeks of her death, which occurred, as before stated, in March, 1869. Waples appears to have absconded in February of that year. It is admitted that the interest due on the 1st of November, 1867, and the 1st of May following, respectively, were received by the Cavileers. Peter Cavileer, as executor, assigned the bond and mortgage to the complainant on the 1st of September, 1869.

The defendants insist that the payments made to Waples, were made to the duly authorized agent of the owner of the bond and mortgage for the time being; that under the authority given them by Mulford at the time of the execution of the contract, and by Peter at the time of the delivery of the bond and mortgage, Pohlmann was justified in paying the principal and interest of the mortgage to Waples, unless

notified of the revocation of Waples' agency. That the agency of Waples for Mulford ceased with the death of the latter, on the 16th of November, 1867, is beyond all question. The disputed payments were both made after that time. But the defendants claim that Mulford was merely trustee for Peter, and that therefore the authority of Waples continued after the death of Mulford, and besides, that Peter was bound by the payments which, according to the testimony of Pohlmann, Henderson, and Prelle, he had authorized Pohlmann to make to Waples, even though at the time he was not the owner of the bond and mortgage. It is insisted by the complainant that the payments to Waples were not valid against the owner of the bond and mortgage, unless Waples, at the time when they were made, had possession of these securities. It is well settled, that the debtor is authorized to infer that an attorney or scrivener who has been employed to make a loan, is empowered to receive both principal and interest, from his having possession of the bond and mortgage given for the loan, or of the former only. The numerous cases on this point will be found collected in *Williams* v. *Walker*, 2 *Sandf. Ch.* 325. See also *Hatfield* v. *Reynolds*, 34 *Barb.* 612; *Megary* v. *Funtis*, 5 *Sandf. Sup. C. R.* 376. But the inference in such cases is founded on the custody of the securities, and it ceases whenever they are withdrawn by the creditor; and it is incumbent on the debtor who makes payment to the attorney or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made. The disputed payments in this case cannot be allowed to the mortgagor, unless the evidence is such as under the law to establish the agency of Waples as against Peter Cavileer, or to estop the latter from denying such agency and to relieve the mortgagor from the necessity of seeing to it, that the agent had possession of the securities when the payments were made. The wife of Peter Cavileer swears that in May, 1868, she came to Jersey City and got the bond and mortgage from Amelia and took them home with her; that she

afterwards, and on that visit, went to New York and saw Prelle, who was Pohlmann's agent, and told him that Mulford was dead and that he need not pay any of the principal, and not to pay the interest unless it was endorsed on the bond. She says, that Prelle then said that Waples had collected the interest on the 1st of May, and she told him not to pay any more unless he had the bond to see it endorsed upon it. She adds, that she told him not to pay any of the principal to Waples. Prelle, however, denies that she said anything to him about paying Waples, prior to a visit which she made to his store in February or March, 1869, which was after the disputed payments were made. I think Mrs. Cavileer is mistaken in regard to the time when this visit took place; that it was in February or March, 1869, instead of May, 1868. Her husband testified that it was after Amelia had told him that the third payment of interest had been made, which was that which was due on the 1st of November, 1868. He says, he then became alarmed and told his wife to go to Jersey City, and stop Waples from having anything to do with the family, and to go to New York and tell Pohlmann not to pay anything on the mortgage to any living man; that, some time in March, 1869, his wife came to Jersey City to see Amelia, who was sick; that his wife then heard and informed him that Waples had collected $500 of the principal of the bond and mortgage, and he thinks this was about the same time that he learned from Amelia that the third payment of interest had been made to Waples. It is true, he subsequently, and on the same day on which this testimony was given, but after he had signed his deposition and the *jurat* had been signed by the master, was recalled, and said he had made a great mistake in stating the time when he sent his wife to tell Pohlmann not to pay anything on the mortgage to any living man, and added that, as near as he could tell, it was in the spring of 1868; but the evidence in the cause leads me to conclude that his first statement was the correct one. Prelle swears to an admission made by Peter Cavileer on this point. He says that Mrs. Cavileer had told him the third payment

of interest, that which was due November 1st, 1868, was endorsed on the bond, and that, on an occasion which appears to have been in or about May, 1869, when he met Peter Cavileer on the ferry-boat, in a conversation which then took place between them, Peter Cavileer told him that he would not acknowledge the receipt of the $500. He says, they then went to see the complainant, who had the bond and mortgage in his possession, and Prelle then discovered that that payment of interest had not been endorsed, and he thereupon asked Peter Cavileer why it had not been endorsed, and the latter then indirectly admitted that he had received the interest, but said that, before endorsing it on the bond, he desired to consult counsel, to know whether it would be proper to do so. In that conversation Prelle says that, as they were going out of Haines' store, Peter Cavileer told him that he was very sorry that he had not sent him notice to discontinue paying to Waples; that he meant to do so, but neglected it, or forgot about it. Again, there seems to have been no reason for the alleged visit of Mrs. Cavileer to Prelle, in the spring of 1868. The interest due on the 1st of May in that year, had been collected by Waples and endorsed on the bond, and duly paid over to her father by Amelia. Besides, it is clear that when, in the interview with Prelle, in his store, in February or March, 1869, he told Mrs. Cavileer that he had paid $500 of the principal of the bond to Waples, she requested him not to go to see Waples in reference to the matter, for about a week, as she wanted to see him first. Now, why did she make this request, if she had, in May, 1868, gone from Burlington county to New York expressly to see Prelle in reference to making payments on the bond and mortgage to Waples, and had then warned him against paying any of the principal to Waples, or making any payment of interest, without seeing it endorsed on the bond? I see no reason to doubt the candor of Prelle, in giving his testimony. His action in the payment of the $500 and the interest due November 1st, 1868, appears in all respects beyond suspicion, and it is difficult to conceive why, if he had

the warning, or any like admonition or notice from Mrs. Cavileer, in May, 1868, he should have sought out Waples, to pay him $500 of principal which had not been called for, and should not even have taken the precaution of ascertaining whether Waples had the bond or not, before making the payment; and so, too, of the payment of interest, subsequently made to Waples on the application of the latter. It seems strange that, if the notification was given in May, 1868, no application was made by Peter Cavileer to Prelle or Pohlmann for the interest due on the 1st of November, 1868. And yet it appears, affirmatively, that none was made at any time.

The authority given to Pohlmann to pay interest and principal upon the mortgage to Waples, is proved by three witnesses, to which is opposed only the denial of Peter Cavileer, whose memory, it is obvious, from an examination of the testimony, is not always to be depended on. Nor do I think that the fact that the bond and mortgage were made to Mulford, deprives this direction of effect as to Peter Cavileer. He seems to have been regarded as the owner of the securities while Mulford was yet alive, for the interest due November 1st, 1867, is receipted under date of October 31st, 1867, in the name of .Peter Cavileer alone. This was in Mulford's lifetime. And besides, he must have known from the endorsement on the bond under date of May 1st, 1868, that Waples was acting as, and was representing himself to Pohlmann to be, his agent in collecting the money on the bond and mortgage. Indeed, there is some reason to believe that the bond and mortgage always were, really, the property of Peter Cavileer.

The authority was to pay the principal and interest of the bond and mortgage to Waples. Under such an authority, it was not necessary, as between Pohlmann and Cavileer, in order to validate the payments, that the former should be able to show that the agent had possession of the securities at the time of making the payments. But it is not clear that Waples had not possession of the securities, when these pay-

ments were made. Peter Cavileer says, that the reason why he cannot swear where the bond and mortgage were when Mulford died, is, that they were in the habit of sending the bond and mortgage to Amelia, (who, it will be remembered, became Waples' wife in November, 1868,) at Jersey City, when the interest was due, that she might collect it. The $500 appears to be irretrievably lost. It was collected by Waples about a month before he was married to Amelia. He seems not to have accounted for it to Peter Cavileer. Very soon after the discovery was made by Mrs. Cavileer, that he had collected it, he absconded. Of two innocent parties one must suffer. Peter Cavileer authorized Pohlmann to pay to Waples as his agent. He never revoked that authority. It is he who should suffer in the premises, rather than Pohlmann.

There will be a decree for the complainant for $1500 of principal money, and interest thereon from November 1st, 1869, the defendants having paid into court an amount equal to the interest on $1500 for one year, from November 1st, 1868. The defendant, Pohlmann, before the filing of the original bill, (that bill was filed November 16th, 1869,) tendered to the complainant the interest due on the mortgage, allowing the payment of $500, up to November 1st, 1869. The complainant refused to receive it. Pohlmann is therefore entitled to costs of the original bill. The supplemental bill was filed November 27th, 1871. The principal of the bond and mortgage became due in 1870. Pohlmann made no tender of the principal when or after it became due. He should pay costs of the supplemental bill.