CLINTON LOAN ASSOCIATION AND W. A. DUNN, Receiver, *v.* W. J. MERRITT et al.

*Assignment of Non-negotiable Instruments—Constructive Notice—Payment.*

1. A bond is non-negotiable until after indorsement, and an assignee of an unindorsed bond takes it subject to any equities or other defences existing in favor of the maker at the time of or before notice of the assignment.

2. It is a general principle that where one has notice of an opposing claim he is put upon inquiry and is presumed to have notice of every fact which a proper inquiry would have enabled him to discover; therefore, where the purchasers of the equity of redemption in land, knowing that there was an outstanding mortgage and without making any inquiry as to the ownership or possession of the bonds secured by it and requiring no excuse for their non-production, paid the amount of the bonds to the mortgagee, who had previously assigned the bonds to plaintiff: *Held*, that the purchasers of the land were affected with constructive notice of the assignment of the bonds to plaintiff.

CIVIL ACTION, tried before *Whitaker, J.,* at December Term, 1892, of SAMPSON Superior Court.

The action was brought by W. A. Dunn, receiver of the Clinton Loan Association, to foreclose a mortgage made by defendant Merritt to A. S. C. Powell to secure three sealed notes which Powell had, without indorsement, deposited with the association as collateral security for his two unpaid notes. The mortgaged land was subsequently conveyed to the defendants J. A. Ferrell and T. M. Ferrell, who, by giving Powell, the mortgagee, credit on an old account, paid him the amount of the secured bonds, Powell promising to have the mortgage canceled. The Ferrells knew that there was an outstanding mortgage on the land, but had no actual notice that the bonds secured by it had been transferred to the plaintiff association. At the time of the settlement with Powell the Ferrells did not inquire who owned or held the bonds, and required no explanation from Powell as to why he did not produce them.

On the trial the plaintiffs insisted that (1) the defendants Ferrell were not protected under the facts by want of notice; (2) that in taking the deed from Merritt they took merely an equity of redemption, and, being subsequent in time to the right of the plaintiffs, they were inferior in right. His Honor refused so to rule and gave judgment for defendants Ferrell, and plaintiffs appealed.

*Mr. R. O. Burton,* for plaintiffs (appellants).
No counsel *contra.*

SHEPHERD, C. J.: The defendant Merritt executed to A. S. C. Powell the bonds and mortgage described in the pleadings, and shortly thereafter the said Powell assigned the bonds, without indorsement, to the plaintiff. The plaintiff took them subject to any equities or other defences

existing at the time of or before notice of the assignment (*Spence* v. *Tapscott*, 93 N. C., 246; *The Code* §177), and, therefore, if, after such assignment and before such notice, the mortgagor or the defendants J. A. and T. M. Ferrell (who had purchased the equity of redemption) made a payment to Powell of five hundred dollars on the said indebtedness, he or they will be entitled, as against the plaintiff, to have it applied as a credit on the said mortgage.

The plaintiff argues that neither party acquired any legal interest, and that the payment consisting simply of the crediting of an account due the Ferrells by Powell, their equities are equal, and this being so the case should be decided for the plaintiff upon the principle embodied in the maxim *qui prior est in tempore potior est jure.* While the principle may possibly apply, we prefer to rest our decision upon another ground, and this is that in making the alleged payment the defendants were guilty of such gross negligence as amounts to constructive notice of the assignment of the bonds to the plaintiff. Of course, there can be no question that if the mortgagor or any one claiming under him makes a payment with such notice, "he does it in his own wrong and must suffer the loss." 1 Jones' Mort., 817.

About a year after the assignment of the bonds the mortgagor sold the land to the Ferrells, and the latter claim that they paid off the mortgage indebtedness by crediting an account which they held against the mortgagee, with five hundred dollars, as above stated. At the time of the transaction the said Ferrells had actual knowledge of the existence of the bonds and mortgage, but they made no inquiry as to who had possession of them, nor did they require that they should be produced or the mortgage canceled. They seem to have relied entirely upon the bare promise of Powell to surrender them to Merritt.

It is a general principle that where one has notice of an opposing claim he is put upon inquiry, and is presumed to have notice of every fact which a proper inquiry would have enabled him to discover. *Bunting* v. *Rix*, 2 D. & B. Eq., 130; *Bryan* v. *Hodges*, 107 N. C., 492. The rule as applicable to this case is happily stated by Vice-Chancellor WIGRAM in *Jones* v. *Smith*, 1 Hare, 43, where he places within the principle of constructive notice "cases in which the party charged has had actual notice that the property in dispute was in fact charged, encumbered or in some way affected, and the Court has, therefore, bound him with constructive notice of facts and instruments, to the knowledge of which he would have been led by an inquiry after (*i. e.*, concerning) the charge, encumbrance or other circumstances affecting the property of which he had actual notice." Illustrations of this doctrine may be found in English Chancery decisions concerning priorities in cases of equitable mortgages, where a failure to inquire for the production of important title deeds is held to be constructive notice, postponing a mortgagee to the claims of another with whom such deeds have been deposited as security. *LeNeve* v. *LeNeve*, White & Tudor L. C., note.

In this country we have very high authority in favor of its application to cases like the present. In 1 Jones' Mortgages, 820, it is laid down that under such circumstances "the mortgagor is bound to take notice of such an assignment upon the discharge of his debt, because proper diligence on his part (or of one who has purchased his equity of redemption) demands that he should require the production of the notes before paying."

In *Kellogg* v. *Smith*, 26 N. Y., 18, it was held that the purchasers of a bond and mortgage, who failed to require the production of the bond, are chargeable with notice of any defect in the assignee's title thereto. GOULD, J., said:

"The truth is they saw fit to trust to Bedell's word that he owned and possessed the bond (with its collateral security), and upon that trust they paid him for the bond and took a written assignment of it. * * * They must abide the consequences of not taking the proper precaution of requiring the production and delivery of the bond."

In *Reeves* v. *Hayes*, 95 Ind., 527, it is said that where notice of the assignment of the debt and mortgage cannot be given by registry, "then one who takes an interest in mortgaged property must ascertain that the person assuming to release the mortgage is the holder of the notes which it secures. It is unquestionably the law that where notice of title cannot be given by record, the person seeking to secure rights must ascertain who is the owner of the mortgage, by tracing the notes to the hands of the assignees."

The foregoing authorities go much farther than is necessary to sustain the plaintiffs' contention, and indeed are in advance of some of the decisions in England and America, which do not require the production of the instruments, but only that an inquiry be made and a plausible excuse be given for their absence. Some of the cases are evidently influenced by the existence of statutory provisions for the registration of assignments of mortgages, the Courts requiring a slighter degree of diligence where such laws obtain than is sanctioned elsewhere.

With a due appreciation of the importance of guarding the doctrine of constructive notice so that it may be kept within proper limits, we must conclude that, taking either of the views we have presented, the Ferrells were affected with constructive notice, as they made no inquiry whatever as to the ownership or possession of the bonds, nor was any excuse given for their non-production.

We are of the opinion that there should be

A New Trial.