Action to recover the amount of a note for $1,750, secured by a deed of trust, to cancel the satisfaction of the deed of trust on the record, which was wrongfully entered by the trustee, F. Rogers Grant, and to foreclose the deed of trust by sale of the land described therein, under the order of the court. The salient facts of the case are these: *Page 58 
In the early part of the year 1912 the defendants Mrs. Foraham and Mrs. Coachman, desiring to purchase a lot in the city of Asheville, N.C. where they intended to reside in the future, authorized Rev. M. Dickey to act for them in that behalf, and he in turn solicited the aid and assistance of Mr. Robert U. Garrett in making and completing the purchase. The place selected was the Pearson Cottage, on Victoria Road, in the city of Asheville, owned by Mrs. Bertha C. Welfley, at the price of $5,750, being a house and lot which had been sold by the plaintiff, James O. Wynn, who lived in Atlanta, Georgia, but did a realty business in Asheville, on 22 April, 1911, to the said Mrs. Bertha C. Welfley, for the sum of $4,500, she paying $1,000 cash, and giving her two notes of $1,750 each, dated 22 April, 1911, the first to be paid on 22 April, 1912, and the second on 22 April, 1913, and bearing interest at the rate of 6 per cent per annum, payable semiannually, on the first days of January and July. Mrs. Bertha C. Welfley and her husband, M. L. Welfley, made a deed of trust to F. Rogers Grant of Asheville, (41) president of the H. F. Grant Realty Company, who was the plaintiff's realty agent in Asheville, to secure the balance due for the property.
The purchase money for the house and lot sold to Mrs. Linnie Coachman Foraham and Mrs. Jeannette Dunlap Coachman by Mrs. Bertha C. Welfley and her husband, M. L. Welfley, was paid by them out of their own funds, by two checks for the sum of $2,875 each, sent to their brother-in-law, Rev. M. Dickey, and turned over to Robert U. Garrett, who in turn placed the same to the credit of his own account in the Battery Park Bank of Asheville, N.C. and against which he, on 22 March, 1912, drew a check, payable to the H. F. Grant Realty Company, for $5,709, the balance due the plaintiff, James O. Wynn, by defendant Bertha C. Welfley and her husband, including the balance of the purchase money due Mrs. Bertha C. Welfley by Mrs. Foraham and Mrs. Coachman, after deducting some items of taxes and adding a small amount for furniture, and on that date delivered the said check to F. Rogers Grant, trustee, a part of the same to be paid over to the plaintiff, James O. Wynn, in full of the balance of principal and interest due him by Mrs. Bertha C. Welfley and her husband as purchase money on said house and lot, and the remainder to be delivered to Mrs. Bertha C. Welfley in payment of the balance of purchase money coming to her from the said Linnie Coachman Foraham and Jeannette Dunlap Coachman, purchasers of said property, which payment was accepted for said purpose by the said F. Rogers Grant, trustee.
On 22 March, 1912, at the time of the making of the payment to F. Rogers Grant, trustee, by Robert U. Garrett, F. Rogers Grant went to the *Page 59 
office of the register of deeds of Buncombe County, where the deed of trust was recorded, and in the presence of the register of deeds made the following entry: "I acknowledge the full satisfaction of this deed of trust, this 22 March, 1912. F. Rogers Grant, Trustee. [Seal]" On the same day, 22 March, 1912, F. Rogers Grant, trustee, in the name of the H. F. Grant Realty Company, remitted to plaintiff, James O. Wynn, at Atlanta, Georgia, by check on the American National Bank of Asheville, N.C. the sum of $1,944.74, in full payment of the outstanding (42) purchase-money note of Bertha C. Welfley and M. L. Welfley for $1,750, due 22 April, 1912, together with the accrued interest thereon, and also the interest accrued to that date on the remaining outstanding purchase-money note of Bertha C. Welfley and M. L. Welfley for $1,750, due 22 April, 1913, neither of said notes being due at said time, and only a part of the interest having accrued on each, the interest which had accrued since 1 January, 1913, not being due on either of said notes. But the outstanding Welfley purchase-money note of $1,750, due 22 April, 1913, although paid to Grant by Garrett for payment to Wynn, was not remitted to Wynn, except the accrued interest up to 22 March, 1912, nor was the receipt thereof from Garrett acknowledged by Grant in making the partial remittance to Wynn, but instead thereof, in his letter of transmittal, he asked whether Wynn would discount said note, implying thereby that it had not yet been paid to him, but that Welfley might pay it at any time if a discount were allowed. To this Wynn replied, under date of 28 March, 1912, that he did not care to discount the said note of $1,750, due 22 April, 1913, until he could find a way to use the money, but would probably like to do so during the following summer, provided he could discount it on good terms. The balance of the payment by Garrett to Grant, trustee, for plaintiff, James O. Wynn, was never turned over to him, either by Grant or by the H. F. Grant Realty Company, Grant dying soon thereafter, and his wife, Mrs. Anna M. Grant, qualifying as his administratrix.
The plaintiff, James O. Wynn, did not know that the amount of the note of the Welfleys, due 22 April, 1913, had been paid to F. Rogers Grant, or the Grant Realty Company, until after the death of Grant, and then discovered it accidentally. There was no evidence that any express authority was given by plaintiff to Grant or the Realty Company to collect the note. F. Rogers Grant died insolvent, and the Realty Company is insolvent. The defendants are Anna M. Grant, administratrix of F. Rogers Grant, Mr. and Mrs. Welfley, Mrs. Coachman, and Mrs. Foraham.
The judge directed the jury that, if they believed the evidence, (43) to answer all the issues in the negative, and accordingly the returned the following verdict: *Page 60 
1. Was F. Rogers Grant, by virtue of his office as trustee in the deed of trust, authorized to receive the money thereby secured and to release the same of record in advance of the maturity of the notes thereby secured? Answer: No.
2. Was the said F. Rogers Grant and the H. F. Grant Realty Company, or either of them, the agents of the plaintiff, James O. Wynn, and authorized as such to receive the money in payment of the notes secured by said deed of trust due and payable on 22 April, 1913? Answer: No.
3. Were the defendants Jeannette Dunlap Coachman and Linnie Coachman Foraham innocent purchasers for value without any knowledge of any lack of authority or power or any alleged lack of power or authority in F. Rogers Grant, the trustee in said deed of trust, to release said deed of trust of record? Answer: No.
4. Are the defendants M. L. Welfley and Bertha C. Welfley indebted to the plaintiff on the note due 22 April, 1913, and if so, in what amount? Answer: $1,750, with interest from 22 March, 1912.
Judgment was entered upon the verdict, and defendants appealed.
The defendants contend that the plaintiff is not entitled to recover upon the remaining note for $1,750, and assign, substantially, five reasons in support of their position, as follows:
1. Mrs. Coachman and Mrs. Foraham were purchasers for value and without notice.
2. F. Rogers Grant and the Grant Realty Company were general agents of the plaintiffs, or special agents, with full and ample authority to accept payment of the notes.
(44) 3. That the trustee was authorized and empowered to release the deed of trust.
4. That the plaintiff ratified the action of Grant by accepting the payment of the first note.
5. That the defendants were fully protected by the record of cancellation.
None of these grounds, in our opinion, is tenable.
The defendants Mrs. Coachman and Mrs. Foraham could not, in any possible view, be bona fide purchasers for value and without notice, and we do not clearly perceive upon what real ground this suggestion can be based. If the trustee, F. Rogers Grant, had entered satisfaction of the *Page 61 
debt and deed of trust upon the margin of the record before they bought from the Welfleys, they might be in a position to plead a bona fide
purchase, in their protection, if they bought for value and without notice of the unauthorized and wrongful satisfaction of the deed of trust by the trustee, though we do not decide that the plea could even then be available, as the question is not now before us, the fact being that they paid the money to Grant by their agent, Garrett, who saw him satisfy the deed, and who knew, at the time, that at least one of the notes secured by it was not then due, and if he had taken the slightest pains to examine the deed, he would have discovered, at once, that neither of the notes was due, and one of them would not mature for more than a year. Garrett, the agent, did not demand the production of the notes, so as to ascertain if Grant had the requisite authority to collect them and satisfy the deed of trust, but he injudiciously paid the money to him without the slightest inquiry into the facts, when it was so very easy to have made one. It should have occurred to any man of ordinary business judgment and prudence to make such an inquiry, and why it was not done does not appear, except that he relied implicitly upon Grant's virtual representation that he had the authority, and his blind trustfulness has caused the whole trouble, and an unmerited injury and loss to his principals. But they must bear it, and not the plaintiff, who in no way contributed to it, and who, so far as the case shows, was without fault. If Garrett did not have actual notice of sufficient facts to put him on his (5) guard, he had what is equivalent to it, the means of knowledge, or constructive notice. Information of all the facts was easily within his reach, but he made no effort to acquire it, and his principals must suffer for his neglect. Qui facit per alium, facit per se. "Constructive notice from the possession of the means of knowledge will have the effect of notice, although the party was actually ignorant, merely because he would not investigate. It is well settled that if anything appears to a party calculated to attract attention or stimulate inquiry, the person is affectedwith knowledge of all the inquiry would have disclosed." Bunting v.Ricks, 22 N.C. 130; Le Neve v. Le Neve, 2 White and Tudor's Leading Cases in Equity, 144; Wittkowsky v. Gidney, 124 N.C. 437; Blackwoodv. Jones, 57 N.C. 54; May v. Hanks, 62 N.C. 310; McIver v. HardwareCo., 144 N.C. 478. The rule is thus put in Wilson v. Taylor, 154 N.C. 211: "A party who may be affected by notice must exercise ordinary care to ascertain the facts; and if he fails to investigate when put upon inquiry, he is chargeable with all the knowledge he would have acquired if he had made the necessary effort to discover the truth," citing Hulbert v.Douglass, 94 N.C. 122; Bryan v. Hodges, 107 N.C. 492, and other cases supra. *Page 62 
Garrett knew that one note was not due, and could have ascertained all the other material facts — want of possession of the notes by Grant, etc., but he was not at all diligent. As said in McIver v. Hardware Co.,supra, at p. 489: "The very circumstances of the case imply full notice to it of all the facts necessary to charge it with liability"; and so it is here as to Garrett.
It has been held by this Court that where a mortgage (or deed of trust) is registered upon a proper probate, it is notice to all the world of the existence of the mortgage, of its contents, and of the nature and extent of the charge created by it. When a party is put upon inquiry, he is presumed to have notice of every fact and circumstance which a proper examination would enable him to find out. Ijames v. Gaither, 93 (46) N.C. 358. See, also, Loan Association v. Merritt, 112 N.C. 243; Collins v. Davis, 132 N.C. 112; Kernochan v. Durham, 12 L.R.A., 41.
The agency of the trustee named in a deed of trust is restricted to the specific duties and powers given by the terms of the deed, unless enlarged by express grant or by inference from special facts and circumstances.Woodcock v. Merrimon, 122 N.C. 731.
The very circumstances of the case imply full notice to Garrett of the essential facts which would have caused a reasonably prudent man to require a production of the note or satisfactory reasons for its nonproduction. If he had only made his check payable to the plaintiff, it would have prevented the consummation of the fraud upon his principals by Grant. But there was not the least precaution taken by him. He took Grant too much at haphazard and upon trust that he was clothed with due authority. It was what Sir William Blackstone calls "happy-go-lucky carelessness." Unfortunately, he found too late that his excessive confidence had been betrayed. But the consequences of all this failure to exercise care must not be visited upon the plaintiff.
The second proposition of defendants is equally untenable. Grant was not the general or special agent of the plaintiff to accept payment of the notes and satisfy the deed of trust on the record. He had no express authority, but, on the contrary, it had been denied to him, when plaintiff, in reply to the request that he discount the last note, refused to do so, but told him that he might consent to it the next summer. So he had no express authority, and there is no evidence of any implied authority.
There is a general principle that when one deals with an agent, it behooves him to ascertain correctly the scope and extent of his authority to contract for and in behalf of his alleged principal, for under any other rule, it is said, every principal would be at the mercy of his agent, however carefully he might limit his authority. *Page 63 
The power of an agent is not unlimited unless in some way it either expressly or impliedly appears to be so, and the person who proposes to contract with him as agent for his principal should first (47) inform himself where his authority stops or how far his commission goes, before he closes the bargain with him. Biggs v. Insurance Co.,88 N.C. 141; Ferguson v. Manufacturing Co., 118 N.C. 946.
The principal is held to be liable upon a contract duly made by his agent with a third person: (1) When the agent acts within the scope of his actual authority. (2) When the contract, although unauthorized, has been ratified. (3) When the agent acts within the scope of his apparent authority, unless the third person has notice that the agent is exceeding his authority, the term "apparent authority" including the power to do whatever is usually done and necessary to be done in order to carry into effect the principal power conferred upon the agent and to transact the business or to execute the commission which has been intrusted to him; and the principal cannot restrict his own liability for acts of his agent which are within the scope of his apparent authority by limitations thereon, of which the person dealing with his agent has no notice. The principal may also, in certain cases, be estopped to deny that a person is his agent and clothed with competent authority, or that his agent has acted within the scope of this authority which the nature of the particular transaction makes it necessary for him to have. Tiffany on Agency, 180 et seq.; Biggsv. Insurance Co., supra; Bank v. Hay, 143 N.C. 326; Brittain v. Westhall,135 N.C. 495; Swindell v. Latham, 145 N.C. 144.
We said more recently in Latham v. Fields, 163 N.C. 356; "The principal is bound by all the acts of his agent within the scope of the authority which he holds him out to the world to possess, although he may have given him more limited private instructions, unknown to the persons dealing with him; and this is founded on the doctrine that where one of two persons must suffer by the act of a third person, he who has held that person out as worthy of trust and confidence, and as having authority in the matter, shall be bound by it. Carmichael v. Buck, 10 Rich. Law, 332 (70 Am. Dec., 226); Story on Agency, sec. 127. `Where a person, by words or conduct, represents or permits it to be represented (48) that another person is his agent, he will be estopped to deny the agency as against third person who have dealt, on the faith of such representation, with the person so held out as agent, even if no agency existed in fact.' Trollinger v. Fleer, 157 N.C. 81; Metzger v.Whitehurst, 147 N.C. 171. These cases fairly illustrate this doctrine and define its limits."
But there is no evidence to bring the case within any of these principles. Grant was not expressly authorized to act for plaintiff in collecting the *Page 64 
money and canceling the deed of trust, nor did the latter hold him out, by any act or conduct of his, as possessing any such authority, and there was nothing that should reasonably have induced the defendants to have supposed that he was clothed with such a power. That Grant had sold real estate for him, or collected rents, was not sufficient for the purpose.
The facts, as they appear in the record, are governed absolutely by the leading case of Smith v. Kidd, 68 N.Y. 130 (23 Am. Rep., 157). These propositions established therein are taken from the headnote, which states them with accuracy:
1. Payment of money due on written security, to an agent who has not either possession of the security or express authority to receive such money, is not good, and the principal may compel the debtor to pay it again.
2. The facts that a loan is made through the agent, and that he has collected the interest, and that he has, in special cases, been authorized to collect the principal of particular mortgages, are not evidence of general authority to collect moneys due his principal, and one who pays to him the amount of a mortgage, without his having the mortgage in his possession, does so at his own risk.
3. Even though an agent has authority to receive payment of an obligation, this does not authorize him to receive payment before it is due.
The Court said more particularly, and with closer application to facts like ours: "If money be due on a written security, it is the duty of (49) the debtor, if he pay to an agent, to see that the person to whom he pays it is in possession of the security. For though the money may have been advanced through the medium of the agent, yet, if the security do not remain in his possession, a payment to him will not discharge the debtor. Henn v. Conisby, 1 Ch. Cas., 93, note. And even the agent being usually employed in the receipt of money does notin this instance constitute such authority as will serve the debtor. It has been so held in respect to money paid upon a bond to one who usually received money for the obligee, but who had not the custody of the bond in question (Gerard v. Baker, 1 Ch. Cas., 94), and even where the obligor had for several years paid the interest and part of the principal to an agent of the lender through whom the money had been borrowed, who had not the possession of the bond, but had regularly paid the money over to the obligee except the last payment, the obligor was adjudged to pay the last sum over again. For it was held, notwithstanding the hardship of the case, that the circumstances of the agent's having before received the interest and part of the principal did not imply that he had any authority to receive it; but as long as he had paid it over, all was well, and any other might have carried it to the creditor as well as he. Wolstenholm v. *Page 65 Davies, 1 Freem. Ch., 289. In this case the master of the rolls said that it was the constant rule of that court that if the party to whom the security was made trusted the security in the hands of the scrivener, payment to the scrivener was good payment; but if he took the security into his own keeping, payment to the scrivener would not be good payment, unless it could be proved that the scrivener had authority from the party to receive it, and that such authority could not be implied from the fact that the scrivener had previously received principal which he had paid over to the obligor," citing Story on Agency, secs. 98 and 104; Curtis v. Drought, 1 Molloy, 487; Williams v. Walker, 2 Sandf. Ch., 325; Doubleday v. Kress,50 N.Y. 410. And in Tappan v. Morseman, 18 Iowa 500, the doctrine is thus stated by Judge Dillon: "So that it may be laid down as a general rule that if a debtor owing money on a written security pays to or settles with another as an agent, it is his duty, at his (50) peril, to see that the person thus paid or settled with is in possession of the security. If not thus in possession, the debtor must show that the person to whom he pays or with whom he settles has special authority, although for some reason not in possession of the security." That case was cited with approval in Security Co. v. Graybeal, 85 Iowa 543
(39 Am. Rep., 311), which is a very instructive case, and closely resembles this one. See Crane Co. v. Gruenewald, 120 N.Y. 274
(17 Am. St. Rep., 643); Dixon v. Wright, 24 Am. Rep. (Miss.), 677; Knife Co. v. Bank, 19 Am.Rep. (Conn.), 517; Doubleday v. Kress, 10 Am. Rep. (N. Y.), 502; Jummelv. Mann, 56 N.E. Rep., 161; Lenoir v. DuHoe, 41 N.W. Rep., 962;Insurance Co. v. Eldridge, 102 U.S. 545; 2 Jones on Mortgages, 957.
To make the application of these authorities to our case plain, we recite a part of the evidence.
M. L. Welfley testified: "I authorized Mr. Garrett to witness the release of the deed in trust, and I notified Mr. Grant to pay to my wife the purchase money, less, of course, the deed of trust and the taxes, whatever taxes were due on the property. I asked at the time for the notes. I asked Mr. Grant. I saw him the day the deal was to be closed; at least, he told me that Mr. Garrett would pay him, and I said, `How about the notes? Have you the notes?' And he read me a letter purporting to be from Mr. Wynn (the letter incorporated in Mr. Wynn's deposition). He said he could not deliver the notes, as Mr. Wynn was in California, and that he, Mr. Wynn, could not return the notes to me until he returned to Atlanta, as no one had access to his safety-deposit box." The letter referred to is that of the plaintiff to Grant, dated 28 March, 1912, in which Grant is informed that Wynn will not discount the last note for $1,750, and certainly not until the next summer. And after all this, *Page 66 
Garrett handed the check to Grant "as the agent of Welfley, believing that he was the agent of Wynn," and so he testified. Not only did they fail torequire the production of the notes, or written authority from Wynn, or to make the check payable to him, but one of them was actually notified that he did not have the notes in his possession, and if (51) Grant read the letter correctly to Welfley, the latter was fully notified that Wynn had refused to accept payment and surrender the note. If he misread the letter to him, it was not Wynn's fault, but the result of his misplaced confidence in Grant. It will be observed that plaintiff, instead of holding out Grant as having the requisite authority, was withholding it by refusing to accept the proposal for the discount and present payment of the note. As said in a similar case: "He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid his money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril, and if loss occurs, he must bear it. One party or the other must suffer, and he, being the party in fault, must bear the burden."Hollingshead v. Globe Investment Co., 42 L.R.A. at p. 664, and the well-considered opinion in that case (on rehearing) is an authority strongly supporting the view of the law that should control our decision upon the uncontroverted facts of this case. See, also, a cogent statement of the principle in Dunlap's Paley on Agency, p. 274; Smith v. Bank, 29 L.R.A. (N.S.), 576; Swift v. Bank, 114 Fed. Rep. (C.C.A.), 643; Scott v.Taylor, 58 So. Rep., 30; Krons v. Medelkafen, 62 N.E. Rep., 239; Fortunev. Stockton, 65 N.E. Rep., 367; Miller v. Mitchell, 52 S.E. Rep., 478.
In Smith v. Bank, supra, the Court, in stating a case in material respects like this, says: "If the defendant desired to have the cattle released from the lien of the mortgage, he should have required the production and cancellation of the note the mortgage was given to secure. Instead of doing this, he remitted the money to pay the mortgage debt to McAllister Co., in the confidence that they would apply it to that purpose. His confidence was misplaced. They had before that sold and transferred the note to the plaintiff. They did not apply the money to its payment, but, instead, applied it to their own use, and wrongfully executed a release of the mortgage that is of no value against the plaintiff."
(52) The Court held in Hughes v. Clifton, 41 So. Rep. (Ala.), 998, that it was gross negligence for a debtor to pay to a supposed agent to collect, without calling for the notes and mortgage and having them produced, citing Smith v. Kidd, supra, and also Haines v. Pohlman,25 N.J. Eq. 183, where it was held: "The inference in such case is founded *Page 67 
on the custody of the securities, and it ceases whenever they are withdrawn by the creditor; and it is incumbent upon the debtor who makes payment to the attorney or agent, relying upon such inference, to show that the securities were in his possession on each occasion when the payments were made."
The Court held in Dibble v. Low, 80 S.E. (Ga.), 998, that when the maker of a note pleads that he has paid the amount due thereon to one authorized to collect it for the payee, he assumes the burden of showing, not only that he has paid the money, but that it was paid to the person authorized to receive it, or that it actually reached the holder's hands. Tiffany on Agency, pp. 212, 213; Hollingshead v. Investment Co., supra, and cases cited; Ward v. Smith, 7 Wall. (U.S.), 447 (19 L.Ed., 207); Pease v.Warren, 29 Mich. 9; Murphy v. Barnard, 162 Mass. 72.
We think the principle which we have stated, and as settled by the authorities cited, is fully sustained by this Court in the case of LoanAssociation v. Merritt, 112 N.C. 243, where it appeared that the purchasers of the equity of redemption from the mortgagor paid the amount of the bonds secured by the mortgage to the mortgagee or original holder of them, who had assigned the same to a third party, without any inquiry by the purchaser of the equity as to the ownership or possession of the bonds at the time of the payment and without requiring their production or sufficient excuse or reason for not producing them. The payment was held not to be good against the real holder.
The trustee could not enter satisfaction until the money was paid, and his act was void as to the plaintiff, who held the unpaid note, as he acted without his authority and exceeded his powers, as defined in the deed.Woodcock v. Merrimon, 122 N.C. 731; 27 Cyc., 1417; Pingrey on Mortgages, 1225; Devlin on Deeds, sec. 710a. The following cases (53) are similar to the one at bar, in this respect: Weldon v. Tallman, 67 Fed. Rep. (C.C.A.), 986; McPherson v. Rollins, 107 N.Y. 316;Hirsch v. Tozier, 143 N.Y. 390 (42 Am. St. Rep., 729). This principle, as to the invalidity of the cancellation, applies in this case, at least, as there is no one who can claim to be a bona fide purchaser for value and without notice, as we have shown.
There was no ratification of Grant's acts by the plaintiff. He had no knowledge of the facts and circumstances, which is an essential element of a binding ratification. Johnson v. Royster, 88 N.C. 194; Story on Agency, sec. 243; Owings v. Hall, 9 Peters (U.S.), 607; Tiffany on Agency, pp. 61 and 72, where he says: "Since ratification rests upon assent, to be binding it must, as a rule, be made with full knowledge of all the facts necessary to an intelligent exercise of the right of election. `No doctrine is better settled on principle or authority than this, that the *Page 68 
ratification of the act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of the material facts. If the material facts are either suppressed or unknown, the ratification is invalid, because founded on mistake or fraud.' Hence, if the principal has ratified upon insufficient knowledge, he may, as a rule, after he is informed of the facts, disaffirm. Knowledge of the facts, however, is sufficient; knowledge of their legal effect is not requisite."
Plaintiff did not know that Grant had received the money for the last note until after the latter's death, and, besides, he had refused expressly to discount the note.
The rule that the principal must ratify all or none of what his pretended agent has done, and that he cannot ratify that part which is beneficial and reject that which is not, does not apply, for one reason, at least, and that is, because Grant and the Realty Company had become insolvent, and he could not be placed in statu quo, and, further, because when he acquired knowledge, the first note had matured and he was entitled to have it paid, and consequently had the right to retain what he had received in payment of it.
(54) It is a general and just rule that when a loss has occurred which must fall on one of two innocent persons, it shall be borne by him who occasioned it, even without any moral wrong or positive fault chargeable to him, and more especially so, if there is bad faith or even a lack of due care on his part, which caused the misfortune.
This is a case of great and peculiar hardship, and one which we would gladly relieve against in behalf of the defendants, were it possible, consistent with the maintenance of sound and important principles of law and rules of equity, and with dispensing justice to the equally innocent creditor, who has as just and meritorious a claim upon our favorable consideration. The case is not one where, if one of two innocent persons must suffer from the wrongful act of a third, the defendants should be relieved from the consequences of their payment to the wrong party, as the plaintiff, who is the owner of the note, was not the cause of their making the payment and did not induce them to make it, but they acted solely upon their own supposition, without due inquiry and care, that Grant had the authority to collect the money. It would be grievous hardship and injustice to the plaintiff, and establish a new and oppressive rule of liability in the law, should we decide otherwise. The charge of the court was correct.
No error.